### AUSTIN, Commissioner of Banking, v. MARSICO. (No. 600–4431.)

(Commission of Appeals of Texas, Section B. March 17, 1926.)

**1. Banks and banking ⊚⇒48(2)—One holding stock of bank as collateral security for debt is not liable as stockholder for debts of bank (Vernon's Sayles' Ann. Civ. St. 1914, arts. 552, 556).**

One holding stock of bank as collateral security for debt of stockholder is not liable as stockholder under Vernon's Sayles' Ann. Civ. St. 1914, art. 552, in view of article 556, for debts of bank, though its records do not show stock is so held.

**2. Banks and banking ⊚⇒49(8).**

Actual ownership of shares of stock will be presumed to be in persons whose names appear upon books of bank as owners thereof.

**3. Banks and banking ⊚⇒49(8).**

Burden is on person in whose name bank stock appears on books of bank to show that he does not own same.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Charles O. Austin, Commissioner of Banking, substituted for J. L. Chapman, against N. Marsico and another. Judgment for plaintiff against R. T. Arthur only and judgment for named defendant was affirmed in Court of Civil Appeals (270 S. W. 1113), and plaintiff brings error. Affirmed.

Jno. T. Suggs, of Denison, for plaintiff in error.

H. H. Cummins, of Denison, for defendant in error.

Wood & Wood, of Sherman, for R. T. Arthur.

SHORT, J. On or before the 15th day of July, 1921, the Denison Bank & Trust Company was doing a banking business under the laws of the state of Texas, on which last-named date it became insolvent, and on which date, as well as before that time, N. Marsico appeared upon the books of the bank to be the owner and holder of 15 shares of its capital stock, having apparently become so by reason of a written transfer from R. T. Arthur and the procurement by Marsico from the bank of the cancellation of the Arthur stock and the issuance to him of new stock in lieu thereof, all within one year prior to the default and closing of the bank. An assessment by the banking commissioner in charge of the defunct bank against all persons who were stockholders within one year prior to its default to the extent of 100 per cent. of the par value of the stock severally held, was made; and Marsico, having refused to pay this assessment, suit was instituted against him and also against Arthur, in which it was alleged that Marsico was denying that he ever was in truth and in fact the owner of the stock, but that Arthur was; the petition alleging that, even if this be true, "it was at no time made to so appear from the records of said bank, nor of the department of banking of the state of Texas, and was by virtue of some secret agreement between the parties, and this plaintiff's right of recovery is not affected thereby." Marsico, after generally demurring to and denying the allegations in plaintiff's petition, among other things, in his answer made the following special defense:

"For further and special answer herein, this defendant states that it is not true, as alleged by plaintiff, that, prior to the 15th day of July, 1921, he was the owner of 15 shares of stock in the Denison Bank & Trust Company, but states the true facts to be: That on, to wit, June 24, 1921, he made a loan to one R. T. Arthur of Denison, Tex., of $2,025, taking as security for said loan 15 shares of stock owned by the said R. T. Arthur in Denison Bank & Trust Company, Denison, Tex., and that he held said shares of stock as collateral security for said loan until, to wit, July 22, 1921, when the said loan was by T. Lawrence Murphy, acting as agent for R. T. Arthur, repaid to this defendant, and thereupon said certificates of stock were delivered to T. Lawrence Murphy, agent of R. T. Arthur, and for said Arthur. That during all of such time the said R. T. Arthur was the owner of such shares of stock, and being the same shares of stock embraced in this suit, for which an assessment of 100 per cent. has been made as alleged by plaintiff herein, and this defendant had no other interest in said certificates of stock other than holding same as security for said debt, which was paid, as hereinabove stated."

There was a trial before the court, which rendered a judgment in favor of the plaintiff in error against Arthur, and denied any recovery against Marsico, and the findings of fact as well as of law were prepared and filed, the findings of fact fully sustaining the truth of the allegations specially pleaded in paragraph 3 of Marsico's answer above quoted, but also finding that Marsico did not notify or advise the Denison Bank & Trust Company that he held the stock as security only, and the Denison Bank & Trust Company in fact had no such notice; and, as a conclusion of law from the findings of fact, the trial court held that Marsico was not liable by reason of the facts found.

The commissioner of insurance and banking duly prosecuted an appeal to the Court of Civil Appeals, and that court affirmed the judgment of the trial court, from which judgment the plaintiff in error prosecuted the case by writ of error to the Supreme Court, which granted the application upon the

---

ground that the judgment of the Court of Civil Appeals in this case was apparently in conflict with the opinion rendered in the case of Chapman, State Banking Commissioner, v. Pettus, 269 S. W. 268. The opinion rendered in this case is to be found in 270 S. W. 1113.

The facts in the Pettus Case are that, in February, 1913, T. W. Pettus purchased 150 shares of the capital stock of the First State Bank & Trust Company of Taylor, Tex., of the total par value of $15,000, and a certificate thereof was issued by the bank to Pettus. A few weeks later, Pettus assigned said certificate to "Mrs. T. W. Pettus," reciting in the written assignment that the same was made "for value received," and authorizing transfer of the stock to be made on the books of the banking corporation, which was done, and stock was reissued to and in the name of "Mrs. T. W. Pettus," who was the wife of T. W. Pettus, though that fact was not affirmatively shown either on the books of the corporation or in any of the written instruments. Mrs. Pettus' name remained on the books of the bank as the owner of the stock for more than 10 years, when the bank failed, and, Mrs. Pettus having been notified by the commissioner that she had been assessed as a stockholder in an amount equal to the sum of the capital stock appearing in her name on the bank's books, and she having refused to pay this assessment, suit was instituted against her, joining her husband pro forma as party defendant. Mrs. Pettus defended on the ground of her coverture, and also alleged that she had never been the owner of the stock, but only held it as trustee for her husband and solely for his convenience. This defense was sustained and judgment rendered in her favor, but against her husband for the amount of the assessment, in response to an alternative pleading. The state banking commissioner appealed from this judgment, and the Court of Civil Appeals at San Antonio, in an elaborate opinion, held that the trial court erred in holding that Mrs. Pettus was relieved of her liability on account of her coverture and also on account of the fact found by the trial court that the appellant was put upon inquiry, which, if pursued, would have disclosed the true ownership of the stock, and reversed the judgment of the trial court, and remanded the case for further proceedings.

It will be noted that the primary question presented by the appeal in the Pettus Case was whether married women owning stock in state banks may be held liable, as all other classes of such stockholders admittedly are, for the assessment authorized by our Constitution and statutes to be levied against such stockholders, and the Court of Civil Appeals in that case held that married women were so liable. In the Pettus Case, the Court of Civil Appeals held that:

"Any person who holds himself out as the owner of shares, by allowing himself to ap- pear as the registered owner on the books of the bank, may be treated as a stockholder; that one holding stock for an undisclosed principal may be held liable as a stockholder, although in fact, he is only an agent; that, although a trustee, as such, is not liable, yet, when stock appears unincumbered in his name, he is liable"—citing the following authorities: 1 Cook on Corp. § 253; 7 C. J. pp. 769, 770, §§ 608, 609; Rankin v. Fidelity Ins. Trust & Safe Deposit Co., 23 S. Ct. 553, 189 U. S. 242, 47 L. Ed. 792; Finn v. Brown, 12 S. Ct. 136, 142 U. S. 56, 35 L. Ed. 936; Kenyon v. Fowler, 30 S. Ct. 409, 215 U. S. 593, 54 L. Ed. 341; Kerr v. Urie, 37 A. 789, 86 Md. 72, 38 L. R. A. 119, 63 Am. St. Rep. 493.

The Court of Civil Appeals in the Pettus Case, however, found that trustees should not be deemed liable where creditors or others seeking to hold them liable as stockholders have notice of the representative capacity in which the apparent owner is acting; but in that case there was no finding of fact that the creditors or others seeking information had actual notice, but that the trial court's finding that the facts were sufficient to put persons of ordinary prudence upon inquiry as to whether Mr. and Mrs. Pettus were husband and wife, and that this inquiry, if pursued a step further, would have disclosed the fact that Mrs. Pettus was simply holding the stock in trust for her husband, to whom liability would then be shifted, was not sufficient to relieve Mrs. Pettus from liability, on the ground that the fact of her coverture meant nothing whatever to the inquirer. The Court of Civil Appeals in the Pettus Case also held that, even if it had been known that Mrs. Pettus was the wife of T. W. Pettus, the record showing that the husband had transferred the stock to his wife for a valuable consideration and without reservation, this was sufficient to confer absolute ownership upon the wife, and, as all owners of bank stock were liable to be assessed for the default to pay the debts of the bank, the commissioner of insurance and banking had the right to a judgment against Mrs. Pettus. In other words, in the Pettus Case the court held that married women were liable as the owners of bank stock, like any other stockholders, to be compelled to pay the assessments made by the banking commissioner under the law to secure funds necessary to pay the debts of the bank, provided only the stock so held by them by virtue of transfers from their husbands has been acquired for a valuable consideration. In substance, the matters in the Pettus Case set up as defenses were coverture and trusteeship. As to coverture, this defense was declared to be immaterial under the facts of that case, since Mrs. Pettus was the owner by purchase for a valuable consideration of the stock from her husband, and the allegations that she was the trustee of her husband were not supported by the testimony.

Article 556, Vernon's Sayles' Ann. Civ. St.

1914, which is now article 537 of the Revised Civil Statutes of 1925, was not directly involved, and was not discussed in the opinion rendered in the Pettus Case, but this particular statute, while perhaps incidentally mentioned in other opinions of some of the Courts of Civil Appeals, has been construed for the first time in the case at bar, and we think construed correctly.

It will be noted, notwithstanding the quotation from the petition of the plaintiff in error above stated, that no facts were pleaded which would constitute in law an estoppel against Marsico to claim whatever legal rights he might have under the facts pleaded as quoted heretofore. So the question of estoppel is not involved in this case, but the sole question presented for determination is whether a person who appears on the books of an insolvent state bank to be the owner of stock therein, but who in fact holds the stock as collateral security for indebtedness due him, is liable for the debts of the bank as provided in article 552, Vernon's Sayles' Ann. Civ. St. 1914, which provides, in the event default shall be made in the payment of any debt contracted by any bank, each stockholder of such corporation, as long as he owns shares therein, and for 12 months after the date of the transfer thereof, shall be personally liable for all the debts of the corporation existing at the time of such transfer or at the date of such default, to an amount additional to the par value of such shares so owned or transferred, notwithstanding article 556 of the same statutes, which is now 537 of the Revised Civil Statutes of 1925, which provides that no person holding such stock as collateral security shall be personally subject to any liability as a stockholder in such corporation, but the person pledging such stock shall be considered as holding the same, and shall be liable as stockholder accordingly.

[1-3] It is our opinion that the language used by the Legislature in the article last mentioned admits of no other construction than that the real owner, as distinguished from an apparent owner whose name appears on the record of shares of stock in a state bank, is liable for any assessment duly and legally made by the commissioner of insurance and banking under the circumstances of this case, even though such real owner's name never appeared on the books of the bank in any form, and that the very language of the statute protects the defendant in error Marsico, under the facts found by the trial court and adopted by the Court of Civil Appeals, from any liability to pay the assessment made by the plaintiff in error, which seems to have been made strictly in accordance with law, and is in such form as would have compelled the defendant in error Marsico to have responded to the demand but for the facts pleaded and proven by him, as above stated. According to the terms of this statute, liability depends on actual ownership when the bank suspends, though, of course, actual ownership of shares of stock will be presumed to be in the persons whose names appear upon the books of the bank as the owners thereof. Austin, Commissioner of Insurance and Banking v. Campbell (Tex. Civ. App.) 210 S. W. 277; Burgess v. Seligman, 2 S. Ct. 10, 107 U. S. 20, 27 L. Ed. 359; 7 Corpus Juris, p. 769, § 607, and authorities cited thereunder; Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723; Cook on Corporations, vol. 1, p. 705. A person in whose name bank stock appears on the books of the bank, while presumed to be the owner of said stock, and while the burden is upon him to show that he does not own the same, yet when he has properly presented in his answer the facts which will relieve him of the liability, and has sustained the said allegations by proof thereof, he has overcome such presumption, and discharged the burden, and is entitled to be protected by virtue of such a situation. Marsico did not own the stock in question when the bank failed, and in fact had never owned it, but only held it as collateral security. The very excellent, concise, and comprehensive opinion delivered in this case by the Court of Civil Appeals through Presiding Judge Willson so clearly presents our views upon this question that we do not think it necessary to say more than we have said.

We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the district court be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

CURETON, C. J., not sitting.