**FURR v. CHAPMAN, Com'r of Insurance and Banking. (No. 826–4520.) ***

(Commission of Appeals of Texas, Section A. June 6, 1926.)

1. **Banks and banking** ⊚⇒49(8).

In suit to enforce stockholder's liability, evidence *held* to show that defendant never became owner of shares in defunct bank.

2. **Banks and banking** ⊚⇒47(1).

In view of Rev. St. 1925, arts. 365, 377, 501, outstanding certificates of defunct bank's "capital stock" or "shares" are not "shares," but mere paper evidence of ownership thereof, which is sine qua non of stockholder's liability under Const. art. 16, § 16, and Rev. St. 1925, art. 535.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Share.]

3. **Banks and banking** ⊚⇒47(1).

Ownership of shares, necessary to stockholder's liability, may exist or be lacking without regard to certification or paper recitals.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Opinion modified 287 S. W. 496.

**4. Banks and banking ⬤⟹47(1).**

As respects stockholder's liability, under Const. art. 12, § 6, and Rev. St. 1925, art. 1353, actual payment for shares of bank's capital stock is prerequisite of ownership, at least as to increased stock, under article 501.

**5. Banks and banking ⬤⟹47(1).**

As respects stockholder's liability, purpose in accepting shares of bank stock and effort made to achieve it cannot be substituted for payment necessary to keep them from being part of fictitious increase within Const. art. 12, § 6.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by J. L. Chapman, Commissioner of Insurance and Banking, against H. B. Furr. On defendant's appeal from a judgment for part of the amount sued for, and plaintiff's cross-assignments, the Court of Civil Appeals rendered judgment for the entire amount (276 S. W. 475), and defendant brings error. Judgments reversed, and judgment rendered for defendant.

Jno. W. Mackey, of Breckenridge, for plaintiff in error.

McCartney, Foster & McGee, of Brownwood, and Hawkins, Hawkins & David, of Breckenridge, for defendant in error.

NICKELS, J. The commissioner of insurance and banking sued H. B. Furr to enforce alleged liability of a stockholder in a defunct state bank in respect to 81 shares—par value, $100 per share. Judgment for $6,544 (representing par amount of 61 shares and interest) was allowed by the district court, but recovery as to 20 shares (claimed to be held by Furr as trustee for his infant son) was denied. The judgment was rendered upon a verdict peremptorily instructed; a peremptory instruction in favor of Furr having been duly requested and refused. Upon Furr's appeal and the commissioner's cross-assignments (in respect to the 20 shares), the honorable Court of Civil Appeals, Eleventh District, rendered judgment for the commissioner for $8,100, par value of the 81 shares, interest, etc., 276 S. W. 475.

[1] Many important questions are presented in the assignments, and while writ of error was allowed with particular reference to the sixth assignment, a study of the record has convinced us that Furr never became an owner of shares in Breckenridge State Bank, and that, perforce, the peremptory instruction requested by him (and whose refusal is the subject of the fifth assignment) should have been given.

The 81 shares purportedly evidenced by the stock certificates in question were a part of a "fictitious increase" of the capital stock, of the banking corporation. Furr never subscribed for them, and never paid, offered to pay, or promised to pay, anything whatever. The corporation had been organized some two years before the "increase" was attempted, and prior to that attempt he had not been a stockholder of the concern. In point of fact he was away from the state when the "increase" was purportedly authorized, and never heard of any proposal along that line, and knew nothing about the matter, until his return to Breckenridge "just shortly prior to November 12, 1921." The certificates were prepared and offered to him on November 7, 1921, by Baker, managing officer of the bank, in connection with a request that Furr qualify as a director so that a "quorum" of the board (which had not existed up to that time) could be procured in order to permit transaction of the bank's business. Furr demurred to this request at first, but, upon Baker's further urgence, he agreed to become a director and to "accept" the certificates solely for the purpose of enabling him to qualify. The bank was hopelessly insolvent at the time, but this was unknown to Furr. He discovered its condition in a day or two afterward, and promptly repudiated any and all connection with the bank. Its doors were closed on November 12, 1921, and its affairs were taken over by the commissioner. These facts are undisputed, and, while the record contains many other things, there is nothing shown to prevent these facts from being determinative of the controversy.

[2] Ownership of "shares" is the sine qua non of liability. Section 16, art. 16, Constitution; article 535, R. S. 1925. "Capital stock" of a state bank is that property represented by, or procured with, the whole and every part of the amount of "lawful money of the United States" which was actually received by the bank from all of its stockholders as the consideration of their contemporaneous and subsequent ownership of "shares." Article 377, R. S. 1925. Acquisition of that fund is a condition precedent to original incorporation (article 377), or to a subsequent "increase" of "capital stock" (article 501, R. S. 1925). The property thus acquired is the fund whose "impairment" is to be detected and remedied by the commissioner. Article 365, R. S. 1925.

[3] "Capital stock" thus being the same thing as the property described, ex necessitate outstanding certificates of stock or of "shares" are not parts of it; they are not the "shares" themselves, but, at best, they are mere paper evidence of ownership of the "shares." Turner v. Cattleman's Trust Co. (Tex. Com. App.) 215 S. W. 831, and authorities there cited. Ownership may, and often does, exist without certification (Id.) or contrary to paper recitals (Id.). So there may be a total lack of ownership with a contemporaneous plethora of adverse record decla-

rations (Id.; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1041; Thompson on Corporations, § 45).

[4] Even as ownership of "shares" is basically essential to liability, so actual payment for the "shares" is an absolute requisite of ownership, in respect, at least, to such "shares" as are here involved. Section 6, art. 12, Constitution; article 1353, R. S. 1925. The Constitution declares that—

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

There may be warrant for saying that stock issued under conditions forbidden in the first clause is not wholly void, since that result is not expressly declared, but the last clause, with a definiteness whose force cannot be circumvented, affirmatively requires that stock issued as a "fictitious increase" "shall be void." That the latter clause means what it says is recognized in Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320, and in Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015. That which is void is not valid—it is nothing. The thing which a stock certificate supposedly represents, in such a case, itself has no existence; the certificate is paper, and nothing more. Even a shadow does not exist where there is no substance.

[5] In one view of the evidence, Furr indicated a willingness to get something for nothing by accepting the stock certificate; in another view of it, he desired only to assist Baker and others out of their difficulties; but his purpose, whatever it was, and whatever effort he made to achieve it, cannot be substituted for that payment which was necessary to keep the "shares" from being part of a "fictitious increase," and, therefore, void.

Our view is that Furr never became the owner of "shares," and hence the condition necessary for imposition of the statutory or constitutional liability does not exist. In stating this conclusion, we are not unmindfull of the decisions in Washer v. Smyer, supra, and in Thompson v. First State Bank of Amarillo, 109 Tex. 419, 211 S. W. 977. In respect to both of those cases one fact condition existed which does not exist here; namely, the holder of the certificate delivered property of a kind for it, although it was not the class of property thought to have been contemplated when the word "property" was used in the constitutional provision noted. In Washer v. Smyer, also, the rights of an innocent purchaser were involved, and the decision had those rights in view. And in Thompson v. Amarillo State Bank the "stock" was not, in fact, intended to be "fictitious" or the subject of a gift.

In view of the conclusions expressed, other questions presented are immaterial.

We recommend reversal of the judgment of the Court of Civil Appeals and rendition of judgment in favor of plaintiff in error, H. B. Furr.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals, reversed, and judgment rendered for plaintiff in error.

CURETON, C. J., not sitting.