The restraining order heretofore granted in this case is dissolved, and will no longer be of any force or effect.

---

**FURR v. CHAPMAN, Commissioner of Insurance and Banking.    (Motion No. 7219.)**

(Commission of Appeals of Texas, Section A. Oct. 27, 1926.)

Banks and banking ☜37—Constitutional law ☜80(2)—Certificate by banking commissioner as to stock increase is not immune to collateral attack, questioning validity of stock; encroachment on judiciary by commissioner not being permissible (Const. art. 2).

Contention that certificate of banking commissioner, showing that bank had complied with law by filing certified copy of stock increase, which, by reference, showed defendant's stock as part of increase, was not subject to collateral attack, and precluded question of validity of stock, *held* without merit, in view of Const. art. 2, segregating three departments of government.

Error from Court of Civil Appeals of Eleventh Supreme Judicial District.

On motion for rehearing. Motion overruled.

For former opinion, see 286 S. W. 171.

Jno. W. Mackey, of Breckenridge, for plaintiff in error.

McCartney, Foster & McGee, of Brownwood, and Hawkins, Hawkins & David, of Breckenridge, for defendant in error.

NICKELS, J. There are some inaccuracies in the statement of facts included in the third paragraph of our original opinion (286 S. W. 171), and because thereof we desire to substitute the following as a statement of the facts which are proved without dispute, and upon which the conclusions expressed in the former opinion were then and are now rested, the inaccuracies being as to immaterial matters:

"November 7, 1921, certificate No. 24, purporting to be for 20 shares of stock of the Breckenridge State Bank, was manually issued to H. B. Furr as trustee for his infant son. At the same time certificate No. 25, purporting to be for 61 shares of that stock, was manually issued to H. B. Furr. On November 12, 1921, insolvency of the bank appeared, and its affairs were taken over by the commissioner. In the spring of 1921 Furr owned 243 shares of the stock of the Guaranty State Bank of Breckenridge, and the bank failed, and its affairs were taken over by the commissioner; the commissioner make an assessment against Furr, on account of his ownership of that stock, equal to the aggregate par value thereof, i. e., $23,400, and the assessment was paid. Breckenridge State Bank was a corporation distinct from Guaranty State Bank. Nothing was paid, or promised to be paid, by Furr, or by Furr's son, or by any person, for or because of the 81 shares of stock of its issuance. This is shown by an agreement between the parties to the suit, made in open court during the trial, to the effect that the Breckenridge State Bank stock was issued to Furr, and to him as trustee, merely because he had owned stock in the defunct Guaranty State Bank."

What we held in the original opinion and what we now affirm is that Furr, as trustee or otherwise, never became the owner of shares of the corporate stock, and the "shares" purportedly evidenced by the certificates amounted to no more than an attempted fictitious increase in violation of the constitutional provision upon the subject.

Various subdivisions of the motion for rehearing are directed at the inaccuracies above acknowledged. In other subdivisions is presented the contention that a certificate of commissioner of insurance and banking to the effect that the Breckenridge State Bank "has complied with the law made, and provided for the amending of charters of banking corporations * * * by filing * * * a certified copy of an instrument showing an increase in the capital stock of said corporation," and which, by reference, shows Furr's stock to be a part of that increase, is not subject to collateral attack, and precludes question of the validity of the stock. In support of this contention, federal cases pertaining to the supposed judicial or quasi judicial powers of the comptroller of the

currency in respect to national banks are cited. But, so long as article 2 of our Constitution remains as it is, it is useless to contend that the banking commissioner exercises the judicial function claimed, or that expression of his judgment upon such a question as is now presented can deprive the courts of power to view the facts, and upon them pronounce the judgment of the law. The commissioner may have broad authority in respect to state banks, but, whatever they are, those powers are referable to other sources, and do not partake of the judicial function.

We have carefully examined all matters presented in the motion, and as a consequence we recommend that the motion be in all things overruled.