**SHAW, Banking Com'r, v. KOPECKY et al.**
**No. 9415.**

Court of Civil Appeals of Texas. Galveston.
March 20, 1930.

Rehearing Denied April 17, 1930.

Spencer, Rogers & Lewis, of San Antonio, for appellant.

Durell Miller, of Yoakum, and H. W. Wallace, of Cuero, for appellees.

GRAVES, J.

Appellant, as banking commissioner of Texas, sued the appellee for $1,000 alleged to be due from him as the owner of ten shares of $100 par value stock in the Yoakum State Bank, of August 16, 1927, by virtue of a 100 per cent. assessment the commissioner had made against the same as being in compliance with R. S. art. 535, after he had closed the bank for liquidation on September 5, 1928.

After demurrer and denial, both general, appellee specially answered that he had never been a stockholder or director in the bank, that in fact it had not only never issued any stock, but had never had any capital stock paid up in money as required by law, hence had never become legally incorporated, in that its sole capital stock at the time of purported incorporation had been made available by two promissory notes for $30,000 each, executed by Philip Welhausen and M. C. Driscoll, respectively, who had then for seventeen months been illegally undertaking to operate a pre-existing bank under the same name, the charter of which had expired in March of 1926.

No detailed statement of the pleadings is deemed essential, in view of the stipulations and findings immediately following.

Trial was had before the court, which rendered judgment for the appellees, and thereafter filed these findings of fact and law:

"Findings of Fact.

"1. On or about March 22, 1906, The Yoakum State Bank was incorporated with a twenty year charter, Fifty Thousand Dollar capital stock. Later its capital stock was increased to One Hundred Thousand Dollars. Its charter expired March 22, 1926.

"2. From March 22, 1926, to August 16, 1927, the business of said defunct State Bank was continued and operated without a charter.

"3. On August 16, 1927, The Yoakum State Bank, a new corporation with the same name, was organized with an ostensible capital stock of One Hundred Thousand Dollars, but the

only capital payment was by means of two notes for Fifty Thousand Dollars each, signed by Philip Welhausen and M. C. Driscoll, respectively, payable to the old Bank which was being operated without a charter, which old Bank entered on its books a credit to the Directors of the proposed new corporation of One Hundred Thousand Dollars. Taking the deposit slip for One Hundred Thousand Dollars to the Commissioner of Banking, the Directors of the new Bank used it in procuring the charter for the new corporation. As soon as the new charter reached Yoakum, the two Fifty Thousand Dollar notes were canceled and the entries reversed on the books of the old Bank.

"4. The Directors of the Old defunct bank then conveyed to the New bank all of the assets of the Old Bank, in consideration of the undertaking by the new bank to fulfill all contracts of the old bank.

"5. There was no evidence as to the value of the assets assigned by the Old Bank to the New Bank, but such assets, and such value as they had, if any, constituted the only capital which was actually paid into the New Bank.

"6. There was no organization meeting of the stockholders of the new Bank, to organize, elect directors, etc.

"7. The by-laws of the new corporation were not adopted until May 15, 1928, some ninety days after the incidents out of which this suit arises.

"8. The stock of the old corporation was not called in or cancelled. Long after the new bank was chartered, a few shares of the old bank corporation changed hands, in which case new stock certificates out of the stock book of the old defunct corporation was issued in lieu of the old certificates.

"9. Three Stockholders of the defunct bank died before the organization of the new corporation, and no stock in the new corporation was issued to their heirs or legal representatives.

"10. In January, 1928, James Shaw, Banking Commissioner of Texas, met with the officers and certain friends of the new bank, and notified them that the capital stock of the new bank was impaired, and called on them to pay into the bank approximately Two Hundred Thousand Dollars in cash.

"11. At a meeting at the office of Green and Shall at Yoakum, Texas, on February 5, 1928, which was Sunday, which meeting was composed of James Shaw, Banking Commissioner of Texas, the officers of the new bank and several of its friends, the Banking Commissioner suggested that a new Board of Directors be elected in order that the bank, with its capital stock re-established, might regain public confidence. The names of a number of citizens were discussed and finally J. D. Gray, O. R. Davis, Ernst Hagens, C. C. Welhausen, C. L. Kopecky, and W. J. Moore were suggested and agreed upon to be the new Directors.

"12. This meeting had not been called for the purpose of electing Directors nor were any real or supposed stockholders notified of a stockholders meeting. Supposed owners of a majority of the stock were present; but it was an impromptu meeting of friends of the bank, with several persons present and participating who were not stockholders in any way.

"13. Having been advised by the Banking Commissioner that the election of the Directors was not regular or legal, the officers of the new bank called a meeting of stockholders for the purpose of electing directors in March, 1928, but at the time stated no action was taken for lack of a majority of stock. The meeting was adjourned to a future date, at which date there was no meeting. At a still later date there was an attempted recessed meeting but there was less than a majority of stock present and no action was taken. This was the last of the matter of the election of directors, and they were never elected.

"14. On said Sunday, February 5, 1928, Philip Welhausen, who purported to be an officer of the new bank, with Dave Shall, who was not a stockholder, and others asked defendant, C. L. Kopecky, to become a director of said bank, for the purpose of helping restore public confidence, and upon his objection that he could not afford to buy the necessary stock, Philip Welhausen assured him that this would not be necessary, but that he, Philip Welhausen, would furnish him with the necessary certificate of stock, which stock he could buy later if he should desire to do so.

"15. On these terms Kopecky consented to be elected a director. He was never elected, as found hereinbefore. He afterwards was handed a certificate of stock for ten shares in the old defunct bank, the proof showing that it was a renewal of stock originally issued in May, 1906, at the organization of the original bank. The receipt signed for by defendant was for this old stock. Defendant, a short time later, gave this certificate back to Welhausen, the donor. Defendant never purchased nor contracted or agreed to purchase any stock in the bank described in plaintiff's petition.

"16. The minute book of the new corporation, introduced by plaintiff, showed a regular stockholders meeting on February 6, 1928, at which the new directors were elected, but the undisputed evidence shows that those minutes did not reflect the truth and that no stockholders meeting was held on said February 6th, but that the meeting referred to in the minutes was actually the informal gathering held on Sunday, February 5, 1928, at the of-

fice of Green and Shall, attended by some of the purported stockholders or officers and other persons, of which meeting no notice had been given.

"17. The defendant signed the statutory affidavit as a director, but it was represented to him merely as a roster of the new directors when they should be elected and installed, and which he signed without reading and without any comprehension of what it meant.

"18. No certificate for any share or shares of stock in the bank described in plaintiff's petition was ever issued. Defendant never became the owner of any stock in the bank described in plaintiff's petition.

"19. Officers of the State Banking Department specifically instructed the parties who acquired the new bank charter in August, 1927, to issue new certificates of stock to its stockholders. This was never done. A new stock book was obtained by the new bank corporation, but only one certificate was ever filled out therein, and it was never detached or delivered to the purported stockholder, Will F. Miller. The stock book of the new bank corporation just mentioned, and no other record of the bank described in plaintiff's petition, ever showed that defendant was a shareholder in said bank.

"20. On September 2, 1928, three days before the closing of the new bank, James Shaw, Banking Commissioner of Texas, discussed with defendant, Kopecky, the above facts in regard to Kopecky's supposed ownership of stock, and told him that he had known from the beginning that Kopecky did not own any stock in the bank, but was holding it only for accommodation purposes and as an act of public spirit and as a service to his community, and that he was not liable to a stock assessment.

"21. Defendant Kopecky attended four or five meetings of officers, directors, citizens (who were neither officers or directors) and State Banking Department officials, between the time he accepted the certificate of stock in February, 1928, until the time of the closing of the bank on September 5, 1928.

"22. There were some new deposits gained by the bank during the time Kopecky served as a director but none of these deposits were shown to have been made because of Kopecky's being a director, and I find that none of them were made because he was a director.

"23. On September 5, 1928, the new bank was closed and officially declared insolvent by James Shaw, Banking Commissioner, and a 100% assessment was levied upon all stockholders, notice of which was afterwards served on defendant, C. L. Kopecky, and upon his failure to pay the sum, One Thousand Dollars, called for, this suit was filed."

"Conclusions of Law.

"1. Defendant never became the owner of any of the capital stock of the bank described in plaintiff's petition, and never agreed to become such owner.

"2. The proof does not support the allegations of plaintiff's petition, in that the proof fails to show that defendant was ever the owner, real or apparent, of any stock in the bank described in plaintiff's petition.

"3. There is a fatal variance between the allegations of plaintiff and the proof, in that the only stock which was ever attempted to be issued to defendant was stock in a different corporation from that described in plaintiff's petition, which corporation had ceased to exist at the time such stock was attempted to be transferred to defendant; and the only record of any purported ownership of stock by defendant is the records of such defunct bank, showing transfer of shares in such defunct bank.

"4. Defendant Kopecky is not estopped to deny ownership of stock in the new corporation for the reason, first, that no deposits were shown to have been made in the bank by reason of his having become a stockholder or director; and second, by reason of the fact that if any prospective depositor or creditor of the bank had asked for and obtained permission to inspect its records, he would not have found any record of Kopecky owning any stock in the new corporation, the only record that he would have found showing a purported ownership, by defendant, of stock only in the old corporation whose charter had long before expired, that is, on March 22, 1926.

"5. The new corporation itself could not legally assert or claim that defendant was a stockholder therein, under the proof in this case, and a creditor of the corporation cannot hold defendant as a stockholder, by estoppel, unless the facts are such that he could be so held by the corporation itself."

The parties agreed upon the trial:

"It is agreed by and between counsel for both sides as facts in the case, that at the time the charter was applied for in August, 1927, by the Yoakum State Bank, that Philip Welhausen and W. C. Driscoll, each executed a promissory note for $50,000.00 to the banking institution then being conducted by them, in Yoakum, Texas, and thereupon, that bank credited $100,000.00 to the new board of directors of the new bank, and when the new charter was issued and delivered to them, they took out the credit for $100,000.00 and cancelled and discharged the two notes; and that no money was paid in for the stock except in this way at the time the charter was granted."

In this court, appellant assails all the material ones of the quoted findings as lacking support in the evidence, in substance, contending upon the controlling features of the cause: (1) That, since the defunct bank's book entries indicated a $100,000 liability to its stockholders, in the absence of proof its assets should be deemed to be worth that much,

and if they used that money in procuring the charter of the institution here involved on August 16, 1927, our banking laws "will be held to have been fully complied with"; (2) that it was shown by the records of the newly chartered institution and aliunde, not only that appellee was both a stockholder (at least by donation) and a director therein, but also that, having acted in both capacities and held himself out to the public as such from February 6, 1928, until the bank was closed on September 5, 1928, during which period creditors dealt with it, he was estopped to deny that he sustained either of these relations toward it.

In the state of the record, these positions, we conclude, are untenable; whether or not all the learned trial court's fact findings are sustained as to minutiæ, in our view, there can be no question that those determining the bank alleged to have been chartered August 16th of 1927 never to have been legally incorporated, and that in no event was the appellee ever a stockholder in such a bank within the meaning of the statute invoked against him, are fully supported by sufficient if not undisputed proof; indeed, the copied agreement of the parties, flanked as it is by indisputable supporting evidence, settles the first of these determinations conclusively; while that alone, we think, ends this controversy adversely to appellant's claims, brief comment will be made upon both considerations.

In the face of the stipulation that no money was paid in for the capital stock of this bank, except in the form of a credit on the books of the defunct bank based solely on regarding as cash the several $50,000 promissory notes of Welhausen and Driscoll to it, which credit and supporting notes alike the proposed new bank's board of directors destroyed on delivery of its charter to them, it is idle to say that article 16, section 16, of our Constitution, and article 378 of our Revised Civil Statutes, both of which mandatorily require that all the capital stock shall first have been fully paid up "in cash" or "lawful money," were complied with; no such legal legerdemain—irrespective of its purpose, which it is here assumed was salutary—could meet those short and simple demands of both the fundamental and statutory law of this state, and no concern with credentials resting only upon shifting sands of that sort could properly exercise authority from it as "a corporate body with banking privileges"; it simply never acquired any legal existence, the cited provision of the Constitution, on the one hand, inhibiting its coming into being at all "until all of the authorized capital stock has been subscribed and paid for in full in cash," that of the statute, on the other, dogmatically thus nullifying any charter that may have already been obtained without that prerequisite, "No certificate of incorporation under this title (Banks) shall be valid unless at the time the articles of agreement were acknowledged the capital stock therein mentioned shall have been bona fide subscribed and paid up in lawful money," thereby conclusively forestalling any applicability of the rule of law appertaining to a de facto corporation; Constitution art. 16, § 16; article 378, Revised Civil Statutes; Article 376, Revised Civil Statutes; Furr v. Chapman (Tex. Com. App.) 286 S. W. 171; Davis v. Allison, 109 Tex. 440, 211 S. W. 980; Turner v. Cattleman's Trust Co. (Tex. Com. App.) 215 S. W. 831; 14 C. J., pp. 156, 157; Wechselberg v. Flour City Nat'l Bank, 64 F. 90, 25 L. R. A. 470.

Appellant, in urging a contrary conclusion and the inapplicability of Furr v. Chapman, supra, which seems to us directly in point, relies upon Thompson v. First State Bank, 109 Tex. 419, 211 S. W. 977, 978; but our Supreme Court in that opinion expressly excepts out of the principle there applied the very kind of a case here existing in this declaration:

"All men are charged with knowledge of the law, but they are not charged with knowledge of the facts. We are not dealing here with a prohibited corporation—one which could not, under the law, exist, and hence without power to issue stock. Nor are we dealing with a stock transaction denounced by the law as utterly void. Stock issued for which no payment is made, or for which full and lawful payment is not made, is illegally issued because such issuance of stock is prohibited by the Constitution. As between the corporation and the stockholder, such stock is invalid. So, the subscriber's giving of his note—which is not property for the purpose —is not a valid payment for the stock, but neither the stock issued nor the note given in such a transaction, is void under the Constitution. * * * The bank here had power to issue the stock. What made the stock invalid was not the bank's want of power— a thing governed by the law, but the manner in which the power was exercised—a thing determined by the facts. Persons dealing with a corporation, while chargeable with knowledge of its powers, are not bound to take notice of the manner in which it has attempted to exercise its powers."

Unlike the bank in that case, this one was affirmatively prohibited by the inescapable edict of the Constitution, and the issuance and delivery of a charter for it, notwithstanding, amounted to nothing more than a dead letter by the express terms of the statute cited supra; so that it neither had the power to exist nor to issue the stock declared upon in this suit, and creditors dealing with it were chargeable with knowledge of such impotency.

This lack of power to exist flowed also from the direct contravention of another declared policy of the state anent the incorpo-

ration of banks under its authority, R. S. art. 376, reciting, "the name or title designating such business shall not be the name of any corporation heretofore incorporated in this State for similar purposes, or any imitation of such name," in that the name of this institution was precisely that of the old bank that had so become defunct on March 22d of 1926—there being further no provision, either constitutional or statutory, authorizing the renewal or extension of the expired charter of a state bank.

■ As before indicated, there is also no lack of supporting evidence for the court's copied findings 14 to 20, inclusive, whereby it is declared that appellee never became a stockholder in the new institution, hence was not liable for the assessment sued for; the appellee himself testified substantially to all that is thus found, was corroborated in material respects, and no contradiction appears; he never paid anything for such stock, neither intended nor was expected to, and did not even retain the purported certificate for it that was so furnished him, having in a short time returned that to Mr. Welhausen, who had arranged to place it in his name on the condition and for the purpose stated in the findings referred to, on the assurance from the latter at the time that "that will clear you all right" from any liability or obligation whatever; wherefore, under the undisputed evidence here, the stock in this instance so conditionally "donated" or furnished to the appellee by Mr. Welhausen was either stock in the old defunct bank, as the face of the certificate ran, which is not sued upon, or it constituted a portion of the capital of the newly designated institution—a fictitious and nonexistent entity; Furr v. Chapman, supra; Chapman v. Thomas (Tex. Civ. App.) 283 S. W. 337 (writ dismissed for want of jurisdiction); Turner v. Cattleman's Trust Co. (Tex. Com. App.) 215 S. W. 831; Const. art. 12, § 6; Austin v. Gamble (Tex. Civ. App.) 297 S. W. 806; Austin v. Marsico (Tex. Com. App.) 281 S. W. 198; Seidel v. Shaw (Tex. Civ. App.) 7 S.W.(2d) 671; Kirby v. Wilson (C. C. A.) 27 F.(2d) 327.

■ In such circumstances, the claim for estoppel against the appellee to deny that he was a stockholder in the institution so officially declared to be insolvent on September 5th of 1928, is equally futile; Furr v. Chapman (Tex. Com. App.) 286 S. W. 171; 7 R. C. L. 389; Union Saving Association v. Seligman, 92 Mo. 635, 15 S. W. 630, 1 Am. St. Rep. 776; 14 Corpus Juris, p. 1010, § 1563; Davis v. Allison, 109 Tex. 440, 211 S. W. 980, 983; Long v. Shelton (Tex. Civ. App.) 155 S. W. 945 (error refused); Anderson v. Walker (Tex. Civ. App.) 49 S. W. 937; Cattle Raisers' Loan Co. v. Sutton (Tex. Civ. App.) 271 S. W. 233, 239; Kampman v. Tarver, 87 Tex. 491, 29 S. W. 768; Cattlemen's Trust Co. v. Beck (Tex. Civ. App.) 167 S. W. 753, 754; Note to Jones v. Dodge, L. R. A. 1915A, page 485, b, and cases in footnote 44.

These conclusions determine the merits of the appeal, and require an affirmance of the judgment entered below; it will be so ordered.

Affirmed.