ZETA GOSSETT, BANKING COMMISSIONER, V. WILLIAM D. GREEN, INDEPENDENT EXECUTOR.

No. 7310. Decided December 6, 1939.
Rehearing overruled January 24, 1940.
(133 S. W., 2d Series, 762.)

*A. J. Lewis* and *R. G. Langley,* both of San Antonio, for plaintiff in error.

A stockholder of a bank is personally liable for the value of his stock in such bank, which liability continued for a period of twelve months after a transfer thereof, and even though he may sell his stock, if he takes no active steps to have such sale transferred upon the books of the bank until after the twelve months period and the failure of the bank, he is still liable therefor. Shaw v. Green, 128 Texas 596, 99 S. W. (2d) 889; American Salt Co. v. Heidenheimer, 80 Texas 344, 15 S. W. 1038; Ulrich v. Thompson, 86 Fed. (2d) 679.

*H. W. Wallace,* of Cuero, for defendant in error.

The debts of the Yoakum bank, for which the plaintiff sued in this case, were never debts of the firm of Green & Welhausen, because that firm was dissolved long before 12 months prior to the date of the bank's failure. Pool v. Chapman, 283 S. W. 762; Shaw v. Noyes, 13 S. W. (2d) 443; Austin v. Cochran, 2 S. W. (2d) 1016.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The Banking Commissioner of Texas on September 5, 1928, closed and took charge of Yoakum State Bank for liquidation and on December 11, 1928, levied an assessment against each stockholder of said bank and every stockholder who had bona fide transferred his stock therein within twelve months previous to September 5, 1928, in an amount equal to the par value of the shares of stock so owned or transferred. This suit was filed by the Banking Commissioner against Philip Welhausen as surviving member of a partnership known as Green & Welhausen, composed of William Green and the said Philip Welhausen, and William D. Green as independent executor of the estate of William Green, deceased, to collect $13,-000.00, the par value of 130 shares of the stock of said bank alleged to have been owned by the said partnership Green & Welhaunsen and caused by the defendants to be transferred on October 3, 1927, to Welhausen & Driscoll, a partnership composed of Philip Welhausen and M. C. Driscoll.

After trial without a jury the district court rendered judgment that the plaintiff take nothing against defendant Welhausen on account of his having been discharged in bankruptcy and that plaintiff have judgment against William D. Green as

independent executor of the estate of William Green for $6500.-00. The Court of Civil Appeals on appeal by both parties, the Banking Commissioner and Green, rendered judgment that the Banking Commissioner take nothing against Green. 106 S. W. (2d) 344.

The decision of the Court of Civil Appeals is based upon the fact that the charter of Yoakum State Bank expired more than two years before the Commissioner took possession of the bank, it being held that, after the expiration of the charter and notwithstanding the continued operation of the bank by its officers and stockholders, the Commissioner had no authority to take possession of the bank's property for liquidation and no authority to levy the assessment against stockholders. Such ruling is clearly in conflict with Shropshire v. Shaw, 121 Texas 463, 49 S. W. (2d) 708, and because of that conflict the writ of error was granted.

Most of the facts are the same as were the facts in Shaw v. Green, 128 Texas 596, 99 S. W. (2d) 889, and that decision determined favorably to the Commissioner most of the questions presented in this case in the Court of Civil Appeals. There is, however, an important difference between the facts in that case and the facts of the instant case sufficient, in our opinion, to sustain the judgment of the Court of Civil Appeals that the Banking Commissioner take nothing against William D. Green as independent executor of William Green's estate.

The material facts, most of which were found by the trial court, and the others established by undisputed evidence, are as follows: Yoakum State Bank was chartered under the state banking laws on March 22, 1906, the corporation to continue for twenty years, and engaged in the general banking business until the Commissioner closed it for liquidation on September 5, 1928. The partnership composed of William Green and Philip Welhausen became the owner of record of 130 shares of the bank's stock of the par value of $13,000.00 many years before the bank was closed, and such apparent and record ownership continued until the said shares were transferred on the books of the bank on October 3, 1927, to Welhausen & Driscol, a partnership composed of Philip Welhausen and M. C. Driscoll. This transfer on the books was made at the request of Philip Welhausen and defendant in error William D. Green, independent executor of the estate of William Green. The bylaws of Yoakum State Bank provided that certificates of its stock were transferable only upon the books of the bank.

On July 9, 1924, William Green by written contract agreed

to sell to M. C. Driscoll his interest in a large amount of real and personal property owned by partnership Green & Welhausen, including the 130 shares of stock in Yoakum State Bank. This contract was fully executed on August 23, 1924, when written assignment was made of the shares of stock and the partnership of Green & Welhausen was dissolved. Plaintiff in error in his brief in the Court of Civil Appeals and in his application for writ of error attacked as not supported by evidence the trial court's conclusion that William Green's sale of his interest in the bank stock was fully executed on August 23, 1924. It is our opinion, however, after examination of the statement of facts, that the trial court's conclusion is well supported by the evidence.

William Green, from a time prior to July 9, 1924, down to April 24, 1927, when he resigned, was president of Yoakum State Bank and a member of its board of directors. He died May 10, 1927, leaving a will by which defendant in error William D. Green, his son, was appointed independent executor. The minute books of Yoakum State Bank show that William Green was absent from every meeting of the board of directors of the bank held from March 30, 1926, until the time of his death. The trial court found and the statement of facts shows that William Green on July 6, 1926, attested a statement of the financial condition of the bank as of the close of business on June 30, 1926. He did not sign the statement, however, as an officer, but merely attested it as one of three directors. One of the trial court's findings as appearing in the transcript is that William Green signed as president of the bank on May 16, 1926, an application to amend the bank's charter. It conclusively appears, however, from all of the instruments executed in connection with this amendment, set out in full in the statement of facts and all dated in 1925, that these papers were executed and this amendment was made in 1925 and not in 1926. Undoubtedly the date was erroneously written 1926 in the preparation of the findings from the written instruments or in copying the findings into the transcript.

Neither the officers of the bank nor the state officials discovered until July or August, 1927, that Yoakum State Bank's charter had expired on March 22, 1926. Those in charge of the bank had, notwithstanding the expiration of the charter, continued to operate the bank and to transact business as theretofore, and as if the charter had not expired. On July 21, 1927, the officers and directors and others who apparently were stockholders of the old bank, executed an application for charter and a charter for a bank to be named The Yoakum State

Bank, to have a capital stock of $100,000.00 and presented the application and charter to the state banking board, which on August 9, 1927, considered the application and granted the charter. Thereupon the charter was filed in the Department of Banking and on August 16, 1927, a certified copy thereof, together with a certificate of authority to do business, was delivered to the incorporators and such certified copy of the charter, which contained the names and addresses of all of the stockholders and the number of shares of stock subscribed and paid for by each of them, was on August 16, 1927, filed in the office of the county clerk of DeWitt County.

In making the application for charter an officer of the bank certified to the Commissioner that there was on hand in the bank subject to check of the proposed new corporation the sum of $100,000.00 representing the capital stock of the proposed bank, which was to take over the assets and assume the liabilities of the old bank. After the charter was granted, however, the Banking Commissioner discovered that no part of the capital stock had been paid in cash, that the $100,000.00 was merely a credit entered on the books of the old bank by reason of two notes executed to it by Philip Welhausen and M. C. Driscoll, and that as soon as the new charter was obtained the credit was reversed and the two notes were cancelled.

After the incorporation, or attempted incorporation, of the new bank all of the books and records of the old bank were kept and used as if there had been no change. No new certificates of stock were ever issued to those who were named as stockholders in the new charter and the bank continued to use the same stock certificate book and the same stock ledger that it always used and thereafter entered in the said stock certificate book and ledger all subsequent sales or transfers of stock, including the transfer on October 3, 1927, of the 130 shares from Green & Welhausen to Welhausen & Driscoll. A new stock certificate book was procured for the new bank and it was found among the books when the bank was closed. No certificates were ever issued from this book. One was prepared to be issued to W. F. Miller for ten shares, but it was not taken out of the book.

It seems that the Banking Commissioner, after the granting of the new charter and after discovering in the fall of 1927 the fact that no part of the capital stock of the new bank had ever been paid, permitted those in charge of the bank to continue to operate it as such and endeavored to induce them, particularly Welhausen and Driscoll, to remove from the bank assets that he regarded as losses and to place the bank in a more solvent condition. At his insistence assets aggregating approxi-

mately $170,000.00 had been removed from the bank on April 13, 1928. The Commissioner called upon them in January, 1928, to relieve the impaired capital of the bank and to make payment to the bank of more than $200,000.00, and in that month something more than $200,000.00 was paid into the bank by the stockholders. Later, in April, 1928, an additional payment of $200,000.00 was made to the Commissioner for the bank by the officers and others interested in preventing the closing of the bank.

Finally the Commissioner reached the conclusion that the bank was wholly insolvent, took possession of it on September 5, 1928, for liquidation, and on December 11, 1928, levied the assessment on account of which this suit was brought. The Commissioner found, and the trial court found, that the bank was insolvent on September 5, 1928, and for a period of more than twelve months immediately prior to September 5, 1928. The assessment was made against each stockholder and against every stockholder who bona fide transferred his stock within twelve months prior to September 5, 1928.

■■ The estate of William Green cannot be held liable on account of actual ownership of the stock, for Green disposed of all ownership and interest in the stock and in the other partnership assets on August 23, 1924, nearly three years before his death and more than four years before the bank was closed. If there is liability it must be by reason of Green & Welhausen's apparent ownership of the stock on account of failure to cause the transfer to be made on the bank's records. Such liability is based upon estoppel. As said by Justice Hodges in the opinion in Chapman v. Beeman, 265 S. W. 243, 244: "It is apparent that the rule which holds stockholders disposing of their shares of stock to a strict compliance with the regulations prescribing the method of making transfers is based upon the principle of estoppel. Presumably, those who extend credit to a bank do so, partly at least, upon the solvency and financial standing of its shareholders; and the records of the corporation are expected to furnish a correct list of those shareholders." See also 3 Ruling Case Law, p. 399, Sec. 28; Michie on Banks and Banking (Permanent Edition) Vol. 2, p. 121, Sec. 41.

It is appropriate to consider what a prospective depositor or other person about to extend credit to the bank would have ascertained from the records before October 3, 1927, when the 130 shares were transferred on the stock book from Green & Welhausen to Welhausen & Driscoll. During the period of the bank's insolvency which, according to the findings of the

Commissioner and the trial court, began September 8, 1927, and even before that time and as early as March 23, 1926, such prospective depositor or creditor would have learned from the charter of the old bank that its corporate existence and consequently its right to do business had terminated on March 22, 1926. One dealing with the bank was charged with knowledge of the terms of its corporate charter and consequently knew constructively that it was not authorized to proceed with banking business after the expiration of its corporate existence. Thompson v. Park Savings Bank (U. S. C. A.) 77 Fed. (2d) 955. Such depositor or creditor after August 16, 1927, when the charter of the new bank was filed, and which was before the beginning of the period of the bank's insolvency, would have found in the bank the charter of the new bank and a certified copy of the same in the office of the county clerk, filed there in accordance with the provisions of Article 381 of the Revised Civil Statutes. See Bank of Midland v. Harris, 114 Ark. 344, 170 S. W. 67, 70-71 Ann. Cas. 1915B, 1255. The charter contained a list of all stockholders of the new corporation and a statement of the number of shares owned by each stockholder. It showed the total number of shares to be 1000 and 370 of them to be owned by M. C. Driscoll and 385 of them by Philip Welhausen. The directors named in the new charter are Welhausen, Driscoll, Treybig, Orth and Hoppe. William Green was dead when the application for the new charter was made. Neither his estate nor his executor is named in the charter of the new corporation as one of the stockholders. The depositor or other creditor would have found that those who were actively in charge of the operation of the bank after the expiration of the old bank's charter until the bank was closed on September 8, 1928, principally Welhausen and Driscoll, were the same persons as those who applied for the charter for the new bank, the same persons who were parties to the subterfuge with respect to the payment for the capital stock of the new bank.

██ It is true that those who conducted the bank during that time kept and used the stock certificate book and the stock ledger of the old bank, that is, they made entries in such books showing transfers of the stock in the old bank. Plaintiff in error concedes in one of his briefs that after the bank's charter expired no transfer of stock, as stock, could thereafter be made. But whatever legal effect may be given to such transfers so made of stock in the old bank they would have, under the facts of this case, little, if any, significance in the matter of apparent ownership, for one about to become a depositor or

other creditor, on finding that the charter of the old bank had expired, would be interested in stock ownership in the new bank and not in transfers of shares of stock in the old bank. Failing to find a stock certificate book or stock ledger showing the names of the owners of stock in the new bank, he would reasonably rely upon the new charter for information as to stock ownership in the new corporation. A person dealing with the bank after the charter had expired and who found in the bank the stock records of the old corporation showing Green & Welhausen as owners of the 130 shares would have been justified in relying upon such records as evidencing that partnership's ownership of the stock at the time the bank's charter expired, but he could not reasonably believe that such partnership had become the owner of a like amount of stock in the new corporation when the charter of the new corporation showed that it had not.

In giving effect to the charter of the new corporation and the stock ownership disclosed by that charter as bearing upon the question of apparent ownership of stock by the partnership Green & Welhausen, we are not unmindful of the fact that in Shaw v. Kopecky, 27 S. W. (2d) 275, (application for writ of error refused) the Court of Civil Appeals held among other things that the new corporation never acquired a legal existence because its capital stock was not paid. That was a suit by the Banking Commissioner to collect one thousand dollars from Kopecky as the alleged owner of 10 shares of stock in the new corporation, The Yoakum State Bank, under the same assessment as that herein sued upon. The Court of Civil Appeals affirmed, on two grounds, the trial court's judgment in favor of Kopecky, first, because the new bank was never legally incorporated and second, because Kopecky never became the owner of stock in the new corporation. Welhausen conditionally donated to Kopecky a certificate for 10 shares of stock in the old bank. For this stock Kopecky paid nothing and he neither intended to retain nor did he retain the certificate that was delivered to him.

The question under consideration in the instant case is not as to the legality of the new bank's incorporation and is not as to any actual ownership of stock. It is one of apparent ownership, that is, whether the records appear to one dealing with the bank to reflect ownership of the 130 shares of stock by the partnership Green & Welhausen. It seem that the Banking Commissioner, even after his discovery of the fact that the capital stock of the new corporation had not been paid, treated

the bank as a corporate body having banking privileges. He must have recognized the new charter as sufficient at least to create a de facto corporation, for he knew that the bank could not be operated under the old charter, which had expired. He permitted the bank to remain open and to transact a banking business and required Driscoll, Welhausen and others to pay into the bank more than $400,000.00 in order to relieve the impaired capital. By filing and prosecuting the Kopecky suit the Banking Commissioner endeavored to hold Kopecky liable as a stockholder in the new corporation. We repeat, therefore, in view of these facts and the other facts above discussed, that to a depositor or creditor the apparent ownership of the stock in the institution would be that set out in the new bank's charter. One becoming a depositor or other creditor of the bank after the expiration of the charter of the old bank and after the filing of the new charter could not reasonably claim, or show by a supposed examination of the records, that he had been misled into believing that the partnership Green & Welhausen still owned stock in the institution, nor could he reasonably contend that he extended credit upon the solvency and financial standing of that partnership or of Green's estate.

■ It is our opinion, therefore, that the peculiar circumstances of this case are such that apparent ownership of the 130 shares of stock by the partnership Green & Welhausen did not continue after the time when the charter of the new bank was filed (August 16, 1927) and that for determination of the liability of the estate of William Green on account of apparent ownership of the stock by that partnership, the facts are in principle the same as if the stock had been transferred on the records of the bank from Green & Welhausen to Welhausen & Driscoll more than twelve months prior to September 5, 1928. It follows that the estate of William Green should not be held liable for the assessment levied by the Commissioner.

Plaintiff in error cites authorities which hold that, although there may have been illegality or irregularity in the manner of the organization of a corporation or although the corporation may have been dissolved by the expiration of the period limited by the charter for its corporate existence, nevertheless officers and stockholders who recognize its existence as a corporation and treat it as such and also creditors and other persons who deal with it as a corporation are estopped to deny its corporate existence. Among the cases cited are American Salt Company v. Heidenheimer, 80 Texas 344, 15 S. W. 1038; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Thompson v. Park

Savings Bank (U. S. C. A.) 77 Fed. (2d) 955; Elson v. Wright, 134 Iowa 634, 112 N. W. 105. The reason supporting the principle is stated in Casey v Galli (supra) to be that such persons "are estopped to deny the reality of things which they have made appear to exist, and upon which others have been led to rely."

It may be that liability could be imposed upon the estate of William Green by the application of this principle, if he had actually participated in the operation of the bank after the termination of the charter and when the bank was insolvent, or if he or his executor had been a party to what the Court of Civil Appeals in the Kopecky case, supra, described as the "legal legerdemain" by which the charter of the new bank was procured. But neither William Green nor defendant in error, his independent executor, is shown by the record in this case to have participated actively in the operation of the bank after its charter expired or to have had any part in causing the issuance of the new charter. Certainly the record contains no evidence of any act on the part of either of them within the period of the bank's insolvency upon which anyone becoming a depositor or other creditor reasonably could have relied to his injury.

William Green continued to be nominally the president and a director of the bank until April 24, 1927. He died May 10, 1927, which was about sixteen months before the bank was closed. It is shown by the record that he never attended a director's meeting, though many were held, after the bank's charter expired. Although plaintiff in error had possession of the records of the bank from the time when the bank was closed to the time of the trial, he was not able to produce, that is, he did not produce, any record evidence, save one instrument, indicating that William Green participated in any way in conducting the bank after its corporate existence terminated. That one instrument was a report of the condition of the bank made July 7, 1926. It is a significant fact that Green did not execute the report as president, although he was nominally president then. It was signed and sworn to by M. C. Driscoll as vice-president and B. H. Treybig as cashier, purporting to be their act for the bank and as its officers. Green attested it as correct, signing with two others as directors.

The single act of William D. Green, independent executor, in requesting on October 3, 1927, the transfer of the 130 shares of stock on the records of the bank from Green & Welhausen to Welhausen & Driscoll did not render the estate of William

Green liable for the assessment on the ground of estoppel. The only effect that such action could have upon persons thereafter becoming depositors or creditors would be to cause them to believe that the partnership Green & Welhausen was not a stockholder.

The decision made herein is based upon the peculiar facts of this case, which is a suit to determine the liability of the estate of William Green. It is not intended to express any opinion as to the liability of anyone whose relation to or connection with the bank was different from that of William Green.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court December 6, 1939.

Rehearing overruled January 24, 1940.