## T. H. DAVIS, RECEIVER, v. J. H. ALLISON ET AL.

No. 2972. Decided April 30, 1919.

**1.—Corporation—Charter—Organization.**

The legislative Act granting a charter does not create the corporation. For this to have existence it was essential that the corporation be organized, at least to the extent provided by the Act. (P. 447.)

**2.—Same—Bank—Constitutional Law.**

A charter for a banking corporation was granted by special Act of the Legislature in 1871. No organization of the corporation was had thereunder until after the adoption of the Constitution of 1876, which prohibited (art. 16, sec. 16) the existence of State banking corporations. The charter never having become a contract by its acceptance and organization before that time, the corporation then became one prohibited by the Constitution, and it could not be given existence by subsequent organization under the special charter. (Pp. 447, 448.)

**3.—Same—Amendment—State Banking Laws.**

The amendment of the Constitution in 1904, so as to authorize the incorporation of banks under general law did not legalize the organization of a corporation attempted under a special charter granted in 1871, and not under such general law. (Pp. 447, 448.)

**4.—Bank—Charter—Vested Rights.**

Corporators who had been granted a special charter for a bank in 1871, but who had not accepted same by organization thereunder until after the adoption of the Constitution of 1876, which prohibited such corporations, acquired no vested authority to be a corporation under their special charter. (P. 448.)

**5.—Bank—Subscriptions to Stock—Corporate Existence.**

A bank having no corporate existence had no right to issue stock or take subscriptions therefor, and a contract to purchase its stock was without consideration or legal force. (P. 448.)

**6.—Same—Estoppel—Creditors.**

Persons dealing with a corporation must take notice of its powers, though not, it seems, of the manner in which it exercises powers possessed by it. As against a receiver of an association professing to act as a banking corporation, who represents its creditors and is seeking to enforce, in their interest, unpaid subscriptions to its stock, the subscribers are not estopped from denying the corporate existence and authority as a corporation to issue and sell stock. Kampman v. Tarver, 87 Texas, 491, followed. (Pp. 448, 450.)

**7.—Same.**

Creditors dealing with a concern reputed to be a corporation, but whose existence as a corporation the law prohibited, are bound to take notice that under the law it has no corporate powers and can exercise none. Thompson v. First State Bank, 109 Texas, 419, distinguished. (Pp. 450, 451.)

**8.—Corporation—Denial of Existence.**

Article 1138, Rev. Stats., does not prevent one sued for subscription to stock in a corporation from showing its absence of power to issue such stock, though the reason assigned may go to its right, under the Constitution, to exist as a corporation. Parks v. West, 102 Texas, 19, followed. (P. 451.)

**9.—Stockholder—Partnership.**

A subscriber to stock in a bank which had no corporate existence might be held liable as a partner to depositors; but an action against him for unpaid subscription to stock must rest on his liability as a stockholder, not as a partner.

Error to the Court of Civil Appeals, for the Third District, in an appeal from Travis County.

Davis, as receiver for the Union Trust Co., sued Allison and others. Judgment was for defendant and it was affirmed on appeal by plaintiff, who then obtained writ of error.

*J. B. Robertson,* for plaintiff in error.

The offer of the State contained in a special act creating a corporation, being beneficial to the incorporators, is presumed to have been accepted. City v. Jones, 28 Texas, 19; Clark & Marshall on Corporations, sec. 66; Attorney General v. Chicago & N. W. R. Co., 35 Wis., 601; Jones on Evidence, 52; Tar River Nav. Co. v. Neal, 10 N. C. (3 Hawkes), 537. Bare acceptance sufficient to bring corporation into existence: Wells v. Gastonia Co., 198 U. S., 49 L. Ed., 1003; Union Water Co. v. Kean, 52 N. J. Eq., 136; Williams v. State, 23 Texas, 287; Railway v. Shambaugh, 17 S. W., 583.

The undisputed evidence showed a charter granted by the Legislature of Texas and that the corporation was engaged in business thereunder; this established *prima facie* the fact of incorporation, and, there being no evidence in rebuttal, that fact should have been regarded as established. Railway v. Shambaugh, 17 S. W., 583; Railway v. Railway, 158 Ill., 393; Lucas v. Bank, 2 Stewart (Ala.), 147; 10 Cyc., 236, 513; Attorney General v. Bank of Michigan, Harrington (Mich.), 326; Charles River Bridge v. Warren Bridge, 7 Pickering, 347; Farmers & M. Bank v. Troy City Bank, 1 Douglas (Mich.), 465; Dunning v. Railway, 2 Ind., 437; 1 Clark & Marshall, sec. 66; Bangor, etc., Ry. Co. v. Smith, 47 Me., 34; Taylor v. Commissioners, 2 Jones Eq. (N. C.), 146; City of San Antonio v. Jones, 28 Texas, 19; Clark & Marshall on Corporations, sec. 67f; Bank v. Dandridge, 6 Law Ed., U. S., 552; Haynes v. Brown, 36 N. H., 560. Mere acceptance brought corporation into existence: Wells v. The Gastonia Company, 198 U. S., 1003; Union Water Co. v. Kean, 52 N. J. Eq., 136; Williams v. State, 23 Texas, 287; Railway v. Shambaugh, 17 S. W., 523. De facto corporation: Thulemeyer v. Jones, 37 Texas, 560; American Salt Co. v. Heidenheimer, 80 Texas, 344; Lehman v. Warner, 61 Ala., 464; Duke v. Cahawba Co., 10 Ala., 91; 1 Clark & Marshall on Corporations, 254, 246; Clark v. Coal Co., 73 N. E., 1003; Catholic Church v. Tobbein, 82 Mo., 424; St. Louis v. Shields, 62 Mo., 252. Estoppel to deny incorporation: Revised Statutes, 1911, art. 1138; Clark & Marshall

on Corporations, 266; McCarthy v. Lavasche, 89 Ill., 271; Gardner v. Minneapolis Ry., 73 Minn., 526; Weinman v. Pass. Ry. Co., 118 Pa. St., 201; Freeland v. Ins. Co., 94 Pa. St., 513; Slocum v. Providence, etc., Co., 10 R. I., 112; Dows v. Naper, 94 Ill., 44; Estate of Davis v. Watkins, 56 Neb., 288; Machen's Modern Law of Corporations, sec. 280; Casey v. Galli, 94 U. S., 170; McDonnel v. Alabama Gold Life Ins. Co., 85 Ala., 406; National Commercial Bank v. McDonnell, 92 Ala., 393; Corinth v. Culver, 69 Ill., 502; Peychaud v. Lane, 24 La. Ann., 404; 2 Clark & Marshall on Corporations, 1568-9; Tar River Navigation Co. v. Neal, 10 N. C. (3 Hawkes), 537; Bank Building Co. v. Pierce, 92 Iowa, 673; Torras v. Raeburn, 108 Ga., 348; Cox v. Dickie, 48 Wash., 265; Marshall Foundry Co. v. Killian, 99 N. C., 504; Ruggles v. Brock, 13 Sup. Ct., N. Y., 164; Tanner v. Nichols, 80 S. W., 226; Cen. Ag. & Mech. Assn. v. Ala. Gold Life Ins. Co., 70 Ala., 132; Daniels v. Tearney, 102 U. S., 415, 26 L. Ed., 189; Elec. Co. v. Dow, 166 U. S., 489, 41 L. Ed., 1088; Pierce v. Railway, 171 U. S., 641, 43 L. Ed., 316; Beaupre v. Noyes, 138 U. S., 397, 34 L. Ed., 991; Eustis v. Bolles, 150 U. S., 361, 37 L. Ed., 1111; Clay v. Smith, 3 Peters, 411; McKinney v. Carroll, 12 Peters, 66; Grand Rapids v. Osborn, 193 U. S., 17; Chandler v. Peters, 44 S. W., 867; Raney v. Allison, 64 Texas, 697.

In subscriptions to increased issues of stock there is no implied condition of full subscription, and there being no evidence of express condition, appellees failed to establish the existence of such condition, either express or implied. Mathis v. Pridham, 20 S. W., 1018; Keller, Receiver, v. Mitchell, 1 White & Willson, sec. 97; Thompson on Corporations (2d ed.), sec. 3855, 589; Morawetz on Corporations (2d ed.), sec. 142; Arkadelphia Cotton Mills v. Trimble, 15 S. W., 777; 10 Cyc., 544-5; Pope v. Trust Company, 118 Tenn., 514; Beach on Corporations, sec. 597; Nutter v. Lexington & C. R. R. Co., 6 Gray (Mass.), 87; Avegno v. Citizens Bank, 40 La. Ann., 799; 2 Clark & Marshall on Corporations, p. 1547, also secs. 407 and 505; 1 Machen on Corporations, sec. 589; 1 Cook on Corporations, secs. 177, 288; Scott v. De Weese, 181 U. S., 45 L. Ed., 825. Fraud no defense: Burleson v. Davis, Receiver Union Trust Company, 141 S. W., 561; Davis, Receiver Union Trust Company, v. Burns, 173 S. W., 476; Mathis v. Pridham, 20 S. W., 1015; 2 Morawetz on Corporations (2d ed.), sec. 839; 1 Thompson on Corporations (2d ed.), sec. 713; Parks v. Kribs, 60 S. W., 905; Marion Trust Co. v. Blish, 79 N. E., 415; Cook on Stocks and Stockholders, sec. 160; Wallace v. Hood, 89 Fed., 16; Dettra v. Kestner, 147 Pa. St., 578; Zang v. Adams, 23 Col., 408, 58 Am. St. Rep., 249; Duffield v. Barnum Wire & Iron Works, 64 Mich., 301; Sanger v. Upton, 23 L. Ed., U. S., 223. Subsequent creditors presumed to trust corporation on faith of capital stock and subscriptions thereto: T. H. Davis, Receiver, v. Burns, 173 S. W., 476; Hospes v. Northwestern Mfg. & Car Co., 15 L. R. A., 474, 50 N. W., 1117, 31 Am. St. Rep., 337; Handley v. Stutz, 139 U. S., 417, 35 L. Ed., 237;

Dwinnel v. Minneapolis Fire and Marine Mut. Ins. Co., 97 Minn., 344; Upton v. Englehart, 3 Dill. (U. S. C. C.), 504; First National Bank v. Mining Co., 18 Am. St., 514, 42 Minn., 327; 2 Clark & Marshall on Corporations, pp. 1454-5; Thompson's Liability of Stockholders, sec. 408; Mathis v. Pridham, 20 S. W., 1018; Peck v. Elliott, 79 Fed., 13; Reed v. Etonton Mfg. Co., 40 Ga., 998, 2 Am., 563; Langtry v. Wallace, 97 Fed., 867, 869; Wallace v. Hood, 89 Fed., 15; Tillinghast v. Bailey, 86 Fed., 48; Olson v. State Bank, 67 Minn., 274; Palmer v. Bank of Zumbrota, 72 Minn., 267; 10 Cyc., 536. It is against public policy to inquire whether creditors did nor did not become such in reliance on capital stock: Vermont Marble Co. v. Declez Granite Co., 87 Am. St. Rep., 143, 135 Cal., 579, 67 Pac., 1057. All creditors who become such after increase is voted are presumed to rely on all subscriptions to such increased stock whether made before or after indebtedness is incurred: Handley v. Stutz, 139 U. S., 417, 35 L. Ed., 237; Palmer v. Bank of Zumbrota, 72 Minn., 266, 75 N. W., 380.

*Batts & Brooks,* and *Brooks, Hart & Woodward,* for defendants in error Allison and others.

There is no presumption that a special act authorizing certain persons named and their "associates and successors" to organize a corporation was accepted by them, and if such a presumption ever obtained it would be in the absence of evidence showing that there was no such acceptance. Quinlan v. H. & T. C. Ry. Co., 89 Texas, 358; 10 Cyc., p. 203 et seq.; Dartmouth College v. Woodward, 4 Wheat., 518, 4 L. Ed., 629.

The act called the "charter" was passed prior to 1876, when the present Constitution was adopted and nothing having been done under the act until after the Constitution prohibiting corporations of the kind authorized to be organized by the act became effective, the subsequent effort to organize and all thereafter done based upon the act of the Legislature were void. Quinlan v. H. & T. C. Ry. Co., 89 Texas, 357.

That subscriptions to the void capital stock of a concern in the form of a corporation organized in violation of law conferred no right in favor of the organization against the subscribers, and conferred no rights on creditors of the organization against such subscribers. Quinlan v. H. & T. C. Ry. Co., 89 Texas, 357; Kampman v. Tarver, 87 Texas, 491; Scoville v. Thayer, 105 U. S., 143.

The Union Trust Company being an illegal organization formed without authority of law and contrary to law, its original "capital stock" and all increase of "capital stock" was illegal and void and "subscriptions" thereto were without consideration, illegal and void. Kampmann v. Tarver, 87 Texas, 491; Scoville v. Thayer, 105 U. S., 143.

The receiver of an insolvent corporation or concern which is operated as a corporation can not maintain a suit against persons who have subscribed to its stock for the benefit of creditors of the concern where, on account of fraud, the concern itself could not maintain the action, and

where the corporation or concern so called is either without authority to exist at all as a corporation or without authority to issue the stock for which the subscriptions are taken. Marion Trust Co. v. Blish, 84 N. E., 18 L. R. A. (N. S.), 347, and cases cited in the opinion and in notes 18 L. R. A. (N. S.), 347.

*D. H. Doom,* and *Templeton, Brooks, Napier & Ogden,* for defendant in error Burney.

Subscriptions to the purported capital stock of an organization purporting to be a corporation but organized without authority of and in violation of law are void. Kampmann v. Tarver, 87 Texas, 491.

The illegal concern called the Union Trust Company was not a de facto corporation. Whaley v. Bankers Union of the World, 88 S. W., 261, and cases cited.

A special charter must be accepted by the corporators before it becomes effective. The burden was on the appellant to show the acceptance of the charter on which he relied. Thompson on Corporations, sec. 7692; 2 Cook on Corporations, sec. 753; 3 Ency. of Evidence, 588-589.

There being no proof that the charter was accepted by the incorporators prior to the adoption of the Constitution of 1876, and that the conditions required by section 2 of the charter, to the effect that it could "be deemed organized" only when $10,000 of the capital stock should be subscribed and ten per cent thereof paid in, the charter was repealed by the adoption of the Constitution of 1876, and could not therefore be accepted. Quinlan v. Railway Co., 89 Texas, 358; Gillespie v. Railway Co., 17 Ind., 243; State v. Dawson, 16 Ind., 40.

As the special charter was never accepted and was repealed by the Constitution of 1876, the Union Trust Company had no power to issue the stock for which the subscriptions were given and the attempted issue thereof was illegal and the subscriptions thereto were not binding because no power existed in the concern to issue the stock for which they were given. Kampmann v. Tarver, 87 Texas, 491; Scoville v. Thayer, 105 U. S., 143.

*Charles L. Black,* for defendant in error Griffin and others.

*Scott & Dodson,* for defendant in error Weinert.

*White, Cartledge & Graves,* for defendant in error Franks.

*Charles Rogan,* for defendant in error Sprague.

*N. A. Rector,* for defendant in error Lacks and others.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The Union Trust Company, operating as a bank, on account of its insolvency was, on January 10, 1910, placed in the hands of a receiver

at the suit of the State for the forfeiture of its charter. The present action was an ancillary proceeding by the receiver against a large number of defendants to recover on their subscriptions for stock in the company, or notes given in that connection. The record is of large volume, but the law questions make necessary only a brief statement of the case.

The company had its origin in a special act of the Legislature of 1871, authorizing the incorporation of the "Banking, Insurance and Mutual Aid Association of the State of Texas" for a general banking and insurance business, with a capital of $200,000, which might be increased to $500,000 and an additional $100,000 for each branch office established. The act named five individuals as the incorporators, among them G. R. Freeman, and provided that the association should be deemed as organized upon ten thousand dollars of the capital stock being subscribed and ten per cent thereof paid to the incorporators.

No attempt by the original incorporators to organize the company was shown. There was introduced in evidence what purported to be a photographic copy of minutes of a meeting held by them in 1871, authorizing Freeman, as secretary, to accept subscriptions and payments thereon, but the jury found, in effect, that the purported original minutes were a forgery. Between the time of the special act of the Legislature and the year 1903, a period of over thirty years, the history of the company, so far as this record discloses, is a blank.

In 1903, Mrs. M. L. Harrell, the widow of one of the incorporators named in the special act, conveyed to G. R. Freeman, for fifty dollars, all rights granted her husband by the act. In 1904, Mrs. Virginia Spalding, the widow of another of the original incorporators, gave Freeman a power of attorney to vote five shares of the company's stock and to sell it. Later, in 1904, Freeman for himself, as agent for Mrs. Spalding, and purporting to act for Edwin Rust, another of the original incorporators, for a recited consideration of $1620, executed a conveyance to J. R. Griffin and Edward Wilkinson of twenty shares of the stock of the company—stated as being all of the stock owned by the grantors, together with such rights as they had under the special act. This document stated that certificates for the stock had not yet been issued.

In May, 1904, Griffin and his two or three associates held a meeting. They adopted by-laws and elected officers; voted a resolution changing the name of the company and its place of business, and another purporting to accept the provisions of title 21 of the general laws in so far as they permitted the amendment of the company's charter. The amendment of the name and place of business was filed in the office of the Secretary of State. Subscriptions for ten thousand dollars of stock were then given, $2000 by Freeman and $8000 by Griffin and his associates. Of these subscriptions the payment of only $1000 was ever made into the treasury of the company. It is evident that the purchase from Freeman by Griffin and his associates of the stock and so-called charter was purely a speculation, and that their proceedings

in respect to subscribing for stock, etc., were for the purpose of a resale at a profit. The company in their hands made no effort to engage in business.

In 1907, Griffin and associates sold their interest in "the stock and charter" to A. M. Waugh and W. F. Wood for $10,000. As a part of the negotiation for this sale a stockholders' meeting was held at which by resolution the name of the company was changed to "Union Trust Company," an amendment to this effect being filed with the Secretary of State.

C. L. Bass and T. H. Bass acquired the rights of Waugh and Wood in 1908. They subscribed for the entire $200,000 capital stock named in the special act. Of this capital stock $2500 was paid in cash; about $15,000 in stock was allowed them for expenses, and for the balance they gave the company their unsecured notes, which were never paid. At a subsequent stage of the company's affairs the stock issued to C. L. Bass and T. H. Bass was cancelled by the directors and it was ordered that their notes be returned.

With the capital of the company thus constituted, it opened as a bank at San Antonio in 1908, establishing branch offices at other places, and accepting deposits.

There was no attempt at any time, after the adoption of the constitutional amendment of 1904, permitting the incorporation of State banks, to organize the company under the laws there authorized, or to have its powers conform to them. The so-called acceptance by Griffin and his associates of title 21 of the general laws was limited to the amendment of the company's name and place of business. It was guardedly stated that the charter was not otherwise altered.

On July 13, 1909, at a stockholders' meeting it was resolved that the capital of the company be increased to $500,000. The subscriptions here sought to be enforced were, in the main, for this $300,000 increase of stock.

Most of the defendants pleaded that their subscriptions were obtained by fraudulent representations as to the original $200,000 capital being fully paid. A number of them interposed special defenses.

The jury found that the special act of the Legislature, authorizing the incorporation of the company was not accepted by the incorporators prior to the adoption of the Constitution of 1876, which prohibited the incorporation of such companies. This finding, in our opinion, has support in the proof.

Save as to those who made default, judgment was rendered for the defendants.

The record makes it patent that the company was a fraud from the beginning of its operations. Its capital was a sham. Depositors and subscribers to the increase of stock were equally duped and deceived. The barter and sale of its so-called charter was a sufficient augury that it would come to no good end.

The common defense to the receiver's suit was that the company had

no legal existence at the time of the subscription transactions; that, hence, it was without any corporate powers, and the transactions were, accordingly, without legal effect. The receiver's response to this was that the defendants were estopped to assert the defense, both in equity and under article 1138, which declares that no one assuming an obligation to an ostensible corporation shall resist its enforcement on the ground that there was no such corporation until that fact has been adjudged in a direct proceeding for the purpose. The determination of these questions is decisive of the case.

The legislative act was not effective to create the proposed corporation. The act was a mere grant of a charter. It served only as authority for the organization of the corporation with the powers granted. For the corporation to have existence, it was essential that it be organized at least to the extent provided by the act. Before an offer can become a contract, there must be an acceptance. A completed corporate charter is a contract. The grant, therefore, of a charter by a special act, without its acceptance, does not constitute a contract. The acceptance must be effected by organization of the corporation, and where no time is fixed by the act, it must be within a reasonable time. Quinlan v. Railway Company, 89 Texas, 356, 34 S. W., 738.

Here, there was not only no organization of the corporation within a reasonable time, but none up to the adoption of the Constitution of 1876. Section 16 of article 16, as then adopted, prohibited the existence of banking corporations—the kind of a corporation authorized by this special act. The reason for the constitutional provision was the grant of such charters as this by the alien Legislatures of the Reconstruction period. The condemnation of those acts was such that the Constitution of 1876 prohibited banking corporations entirely.

The corporation authorized by this special act not having been organized prior to the adoption of the Constitution of 1876, it necessarily became, under the Constitution, a prohibited corporation. Thereafter, it could have no legal existence, could possess no corporate powers, and could exercise no corporate functions. It stood as though the special act, here relied upon as its charter, had never been enacted. It would nullify the Constitution to hold that a corporation which it condemned as unlawful could, merely because authorized before its adoption, organize after its adoption as a lawful corporation. The Constitution terminated the right of the corporation to organize and hence its power to organize.

It would equally evade the Constitution to say that the corporation could have legal existence because in 1904 the Constitution was amended so as to authorize the incorporation of banks by general laws. There was no attempt to organize the corporation under those laws. They are not the source of its purported powers. The special act is alone the authority for its existence. The amendment gave warrant for the lawful existence of banking corporations, but only the kind it contemplated and authorized. It makes lawful the incorporation of banks under the

general laws with the protection which they afford the public, but it equally makes unlawful the existence of a banking corporation unless it is organized under and subject to those laws. It is a repudiation of its provisions to say that it recognizes as entitled to lawful character a banking corporation organized under a special act.

No rights became vested under the special act prior to the adoption of the Constitution of 1876. The original provision of the Constitution, prohibiting banking corporations, effectually repealed it. With its repeal, all rights theretofore available under it died with it. It was not revived, and could not be, by the amendment of 1904. The corporation, therefore, stood as fully prohibited after the adoption of the amendments as, in consequence of the original constitutional provision, it did before. Having no legal existence, it had no powers. It had no authority to issue stock or to take subscriptions for stock. Its purported stock was spurious. Any contract to purchase it was without legal consideration and without legal force. The subscription agreements were therefore unenforcible as between the company and the defendants.

They are likewise unenforcible in the receiver's suit unless estoppel or article 1138 prevents the assertion by the defendants of their invalidity.

There was no estoppel. That question is concluded in this court by Kampmann v. Tarver, 87 Texas, 491. That case involved an attempted increase of stock not within the powers of the corporation. In affirming that subscribers for the issue were not liable on account of its invalidity, it was held that they were not estopped to make the defense in a suit by a receiver for the benefit of creditors. This was because the powers of the corporation were determined by the law. The law made it plain that the corporation was without power to issue the increased stock. The creditors were charged with knowledge of the law. They were therefore in no position to say that they were misled by the subscriptions for the illegal issue, and there was accordingly nothing upon which they could base an estoppel against the right of the subscribers to assert its invalidity. In the course of the opinion this was said by Judge Gaines:

"We are also of the opinion that the third question certified for our determination should be answered in the negative. The practical effect of holding that a contract of subscription to an illegal issue of stock would be binding as between the corporation and its stockholders would be to enable a corporation to override the policy of the law and to increase its stock at will. The creditors have the right to look to the stock subscriptions as a fund for the payment of their debts. When the corporation has the power to increase its stock, cases may exist in which subscribers to an increase of stock may so act as to estop themselves from denying, as to creditors, the validity of such increase. This occurs when the power exists, but has been exercised in a manner not authorized by law. We are not aware that it has ever been held that

persons dealing with a corporation are bound to take notice of the manner in which it has attempted to exercise its powers. But it is well settled that they must take notice of its powers. Fitzhugh v. Franco-Texan Land Co., 81 Texas, 306, and cases there cited; Scoville v. Thayer, supra; Zabriskie v. Railway, 23 How., 381. The act of subscribing to additional shares of stock in a corporation which are not authorized by law may be equivalent to an assertion that the proposed issue is legal. But since a creditor is affected with notice of the powers of the corporation, how can it be said that he has been by such action misled to his prejudice?"

Scoville v. Thayer, 105 U. S., 143, cited in Kampmann v. Tarver, is a leading case upon this question. It was also a suit for the benefit of creditors of an insolvent corporation to recover subscriptions for stock attempted to be issued in excess of its lawful powers. We quote from the opinion as follows:

"We think that he is not estopped to set up the nullity of the unauthorized stock. It is true that it has been held by this court that a stockholder can not set up informalities in the issue of stock which the corporation had the power to create. Upton v. Tribilcock, 91 U. S., 45; Chubb v. Upton, 95 id., 665; Pullman v. Upton, 96 id., 328. But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant.

"But here, the corporation being absolutely without power to increase its stock above a certain limit, the acquiescence of the shareholder can neither give it validity, nor bind him or the corporation. 'A distinction must be made between shares which the company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which, they have been issued. The holders of shares which the company has no power to issue, in truth had nothing at all, and are not contributors.' 2 Lindley, Partnership, 138. And see Lathrop v. Kneeland, 46 Barb. (N. Y.), 432; Mackley's Case, 1 Ch. D., 247. . . .

"Upon the principles stated in these authorities, we are of opinion that the defendant is not estopped by any acts of his, to assert the invalidity of the stock issued in excess of the limit authorized by the charter, and to deny his liability thereon."

In 2 Clark & Marshall on Corporations, sec. 407, at page 1287, this is declared:

"If a corporation increases its capital stock when it has no power to do so under any circumstances, persons subsequently dealing with it are chargeable with notice of its want of power, and they can not, as creditors of the corporation, contend that the holders of the unauth-

orized stock are estopped to deny its validity for the purpose of escaping liability as stockholders for the debts of the corporation."

See also Veeder v. Mudgett, 95 N. Y., 295, at page 310, and Insurance Company v. Kampner, 73 Ala., 325.

If estoppel can not be predicated against a subscriber for stock whose issue is not within the corporation's powers, on what theory can an estoppel exist against a subscriber for stock of a purported corporation which is wholly without any powers? Persons dealing with a corporation are not charged with knowledge of the facts, but they are chargeable with knowledge of the law. All men are charged with that knowledge. That is why all men are subject to the law. Creditors can not blind themselves to the law. They must, like everyone else, take notice of it. If they deal with a concern reputed to be a corporation, but whose existence as a corporation the law prohibits, they are bound to know that under the law it has no corporate powers and can exercise none. They are held to know that it can not issue stock and that subscriptions for its stock are therefore without consideration and unenforcible. Being held to this knowledge under a universal principle, how can they claim to have been deceived into giving credit upon the faith of such subscriptions? They can make no such claim because they are not innocent and have not been misled. They are in the position of having dealt with the reputed corporation fully aware of the illegality of the transaction, and they cannot be prejudiced, therefore, by the assertion of its illegality.

Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny. But one entitled to its protection must have been misled. Creditors can not be misled by a subscription to stock of a reputed corporation whose existence the law prohibits, and which it was accordingly without authority to issue. This is so because they are bound to take notice of its powers. Such a transaction does not present merely an illegal exercise of a lawful power,—a thing resting in the facts, as to which the law does not impute knowledge to third persons. The proposed stock is wholly void and the transaction unenforcible because of the entire absence of any power in the corporation to issue the stock,—a thing determined by the law, and as to which it imputes knowledge to all persons. Charged as they were with knowledge of this company's powers under the law, and therefore held to know that these subscriptions were of no legal effect, creditors could not assume that they were of any binding force. They could not thereby have been deceived to their injury. No injustice is done them, therefore, in permitting the defendants to assert the invalidity of the subscriptions, and no estoppel against such defense can arise.

The case is distinguishable from Thompson v. First State Bank, 109

Texas, 419, recently decided. There, the corporation possessed the power to issue stock, and there was only an illegal exercise of the power. The transaction was voidable, not void. Innocent creditors could not be held chargeable with knowledge of the manner of the exercise of the power and hence were entitled to invoke estoppel against the subscriber who was seeking, in a receiver's suit, to defeat his note given for the subscription. They were in the position of having been misled by their warranted belief that the subscription was a legal one and could be enforced. Here, the reputed corporation was prohibited by the Constitution. It was wholly without power to issue any stock. Creditors were not warranted in giving any faith to the subscription. They were bound to know that the subscriptions were not enforcible, and therefore could not have been misled by them. Nor is the case to be confused with those where the corporation is illegally organized, which defense, it is generally held, stockholders are estopped to assert against creditors. Those cases deal with corporations which may legally exist and which may exercise lawful powers, not with prohibited corporations which can possess no corporate powers.

Article 1138 does not, in our opinion, prevent the assertion of the defense that this purported corporation was, under the Constitution, wholly without any power to issue stock. The statute is designed to prevent a collateral attack upon corporations in respect to the class of transactions with which it deals. But the fact that one is denied the right to level such an attack upon a corporation does not prevent his asserting its entire want of corporate power. Parks v. West, 102 Texas, 19. It would be a mockery of justice to enforce these subscriptions if the purported corporation could not at any time have issued the stock upon their payment. The Constitution made the company powerless to issue stock by its prohibition against the company's existence as a corporation. A statute could not in effect legalize the stock by denying the right to assert the invalidity which the Constitution visited upon it. It was not intended, in our opinion, to have application to such cases, and can have none.

It is urged by the receiver that at all events the defendants should be held liable as partners. Those who became members of the company could, in a proper proceeding, be held so liable for the moneys which depositors entrusted to them, but not in a suit of this character. The liability of the defendants is sought to be established here purely upon their subscriptions to stock. That is the case made by the pleadings. If they are liable as partners, it is not upon the subscriptions, but for the money of depositors received and converted. That would be a liability, not to the company, but primarily to the depositors. Mr. Davis having only been appointed receiver of the corporation as such, can assert only liabilities which were due to it. A proceeding purely ancillary to such a receivership is not appropriate for the enforcement of a liability as partners against stock subscribers.

The case was correctly determined in the District Court and by the Court of Civil Appeals. Their judgments are accordingly affirmed.

*Affirmed.*

(Associate Justice Hawkins, being disqualified, took no part in this decision.)