### GREER et ux. v. FRANKLIN LIFE INS. CO.

### No. 12230.

Court of Civil Appeals of Texas. Dallas.

May 29, 1937.

Rehearing Denied Sept. 25, 1937.

Dwight Whitwell and Sisco & Sisco, all of McKinney, for appellants.

John D. Reese, of McKinney, for appellee.

BOND, Justice.

On February 24, 1930, appellants, J. V. Greer and wife, owned three tracts of land located near the town of Celina, Collin county, Tex.; the first tract of 160 acres is situated about two miles from the other two tracts; the second tract of 48.16 acres adjoins the third tract of 78 acres. All of the tracts are well improved, suitable for a home. Appellants secured a loan of $8,200 from A. Y. Creager Company of Sherman, Grayson county, Tex., giving security therefor two deeds of trust on the above second and third tracts of land.

The appellants brought suit in the district court of Collin county to set aside the mortgage on the 48.16 acres of land, on the ground that it was their homestead, exempt to them under the Constitution and laws of this state, thus the attempted lien was void

and should be canceled; and, further, the appellants sought to have the loan contract declared usurious and the interest paid thereon credited on the principal of said note.

The appellee, Franklin Life Insurance Company, filed a general denial and set up a plea of estoppel based upon fraudulent acts, statements, and representations made by appellants to the lender, inducing the company to extend the loan on the alleged homestead; denied the existence of usury in the loan contract, and sought judgment for the amount of its indebtedness and a foreclosure of the lien on the two tracts of land.

On trial to the court without a jury, judgment was entered in favor of the Franklin Life Insurance Company and against J. V. Greer for the full amount of the indebtedness and against J. V. Greer and his wife, Maude L. Greer, for a foreclosure of the lien upon the 78-acre tract of land, and denied to it a foreclosure upon the 48.16-acre tract; and in favor of J. V. Greer and Maude L. Greer, canceling the deed of trust lien on the homestead and decreeing the loan contract free of usury; all costs taxed against the plaintiff J. V. Greer.

The Franklin Life Insurance Company appealed from the adverse judgment refusing a foreclosure of its deed of trust lien on the 48.16 acres; and J. V. Greer and Maude L. Greer appealed from the judgment, denying to them recovery on their claim for usury, and the taxing of costs against the plaintiff Greer.

We will first give consideration to appellee's assignment of error challenging the action of the trial court in denying to it a foreclosure on the 48.16 acres of land. The assignment is based upon the question of estoppel.

The note and deeds of trust bear date February 24, 1930, drawn in favor of A. Y. Creager Company. On that date, the loan in question was finally consummated, and soon thereafer, in due course, transferred to Franklin Life Insurance Company. The deeds of trust were duly signed and acknowledged by both Greer and his wife. The note represents a loan given to extend the payment of an existing vendor's lien note due on the 78 acres, which note Greer and wife had executed to one Addie Stone for the purchase of said land. The deeds of trust convey and specifically describe, by metes and bounds, the 78 acres and the 48.16 acres, and contain the following pertinent recitals on the point here involved: "The land which we reside upon, use, occupy, and claim as our homestead consists of 160 acres of land in the Daniel Howell and Mary Howell Surveys described in deed from H. Stone et al. to J. V. Greer, recorded in Volume 269, page 462, Deed Records of said County and we hereby covenant that the 48.163 acres above described has never been used, occupied or claimed by us as a homestead nor intended to be used, occupied or claimed by us as such but we hereby designate and set apart as our homestead the 160 acres described in the Deed from H. Stone, et al. v. J. V. Greer above mentioned and 40 acres off of the North end of the 78 acre tract above mentioned. * * * The property herein conveyed forms no part of any property owned, used or claimed by Grantors as exempt from forced sale under the laws of the State of Texas, in so far as the indebtedness herein secured is concerned and all claims thereto under such laws are disclaimed and renounced."

Prior to the execution of the note and deeds of trust, J. V. Greer and one R. H. McCoy had been negotiating with A. M. Russell, agent for A. Y. Creager Company, for the loan. McCoy was financially interested in the sale of the 78 acres and expected pay of his sale's commission on final consummation of the loan. McCoy and Russell knew that Greer and wife had been occupying the house on the 48.16 acres in question. On January 28, 1930, Greer executed and delivered to Russell for Creager Company a written application for the loan, which contained the following recital: "My homestead is 40 acres off North end of the above 78 acres and 160 acres located two miles East thereof, to which I will move in a few days, in Collin County, Texas." On February 19, 1930, Russell made an inspection trip to the 48.16 acres, found both Greer and McCoy on the land, and was then informed by Greer that he and his wife had two days before moved from the 48.16-acre tract to the 160-acre tract, to make it their future home, and that McCoy had rented the 48.16-acre tract for the year 1930. At that time, they submitted to Russell a written lease contract for the 48.16-acre tract, which had been executed by Greer and McCoy, and, at their request, Russell signed his name thereto as a witness to the signatures. This contract

apparently obligated McCoy to live upon and cultivate the 48.16 acres of land for the year 1930, and pay Greer a certain stipulated rental. McCoy testified that he asked Russell if he was bound to the contract, and that Russell said: "Such contract would not bind me to live on the farm and stay there the entire year. He said any trade I made with Greer after I made this rental contract, was optional with Greer and I."

On February 21, 1930, J. V. Greer and wife executed to A. Y. Creager Company a joint affidavit, which contained the following recitals:

"On February 17, 1930, said J. V. Greer and wife moved from said 48.163 acres to said 160 acre farm with all their household goods and personal effects and at once began cultivating said 160 acres and are now residing upon, using, occupying and claiming said 160 acres as their homestead and hereby designate and set apart as their homestead said 160 acres, together with 40 acres off of the North end of the 78 acre tract described in said deed from Addie Stone to J. V. Greer, and they do hereby expressly abandon, disown and disclaim any and all homestead interest or claim which they now have, or at any time may have had in and to the 48.163 acre tract above mentioned, and do hereby expressly state that neither said 48.163 acres, nor any part thereof constitutes any part of their homestead.

"This affidavit is made for the purpose of stating the facts and to induce A. Y. Creager Company of Sherman, Texas relying upon the statements herein made, to purchase from said Addie Stone the $8200.00 note described in the Deed from Addie Stone to J. V. Greer, conveying said 78 acres and to make to said J. V. Greer and wife a loan of $8200.00 upon said 78 acres and upon said 48.163 acres above mentioned. Reference is hereby made to the above Deeds and the records thereof for a better description of said land and notes."

On February 24, 1930, Russell made another inspection trip to the 48.16-acre tract and found thereon R. H. McCoy and wife in apparent possession of the property; also, found J. V. Greer and wife in possession of the 160 acres; Mrs. Greer was in the house and Mr. Greer plowing some distance from the house. They were apparently in full possession of the premises, had on the floor of the front room of the house an attractive rug which the evidence shows Russell had previously observed and admired while on the floor in the house on the 48.-16-acre tract. This rug was the only household effect moved from the 48.16-acre tract to the 160-acre tract, and was done perceptibly to deceive Russell.

Plaintiff J. V. Greer testified that, in December, 1929, he and his family moved on the 48.16-acre tract in question, and, at the time he secured the loan, was in actual possession, using, and enjoying that tract as his homestead, and has never lived on the 160-acre tract; that R. H. McCoy, wife, and children occupied and were actually cultivating the 160-acre tract as his tenants; and that the instruments offered in evidence, reciting his homestead otherwise, did not state the true facts; they were prepared and mailed to Creager Company for the sole purpose of getting a loan on the land conveyed in the deeds of trust and to deceive the lender.

Mrs. Maude L. Greer corroborated the testimony of her husband as to the homestead character of the land, and in addition gave evidence that, on February 24, 1930, she and her husband were living on the 48.16-acre tract and learned through Mr. McCoy that Mr. Russell was coming out to the place for an inspection of the security for the loan company. In the afternoon of that day, Mr. Russell came out to the 160-acre tract, and, after some conversation with Mr. Greer, he told Mr. Greer "that the papers are all fixed now and you can go back home. We were out on the 160 acres because Mr. Russell asked us to go out there." Quoting from her testimony:

"Q. How long had you been staying there in the room? A. I expect fifteen or twenty minutes when Mr. Russell came. * * *

"Q. And you say that as soon as he told you that the loan was all right, that the papers were all fixed up, that you could go on back is that your statement? A. That we could go back home now.

"Q. Said that you could go back home? A. Yes. * * *

"Q. Well you were over there on the 160 acres in order to get the loan were you not; that was your purpose in going there on the 160 acres? A. It was.

"Q. Why did you go over on it? Did you have a reason for going over there in particular? A. We couldn't get the loan on our homestead 48 acres was our homestead and we couldn't get a loan on it Mr. Russell said, and he said if we would just vacate un-

til the papers were fixed up it would be all right and we vacated. * * *

"Q. And you went over on the 160 acres of land to make it look like you were living on that land? A. Yes we went over there.

"Q. And you thought by going over there on the 160 acres of land that you could get the Loan Company to make the loan? A. That is what Mr. Russell told us. * * *

"Q. Now, Mrs. Greer, when you went out on the 160 acres of land did you take any of your things out there? A. What I wore, my clothes, that I wore, that I had on—I did not carry anything. I never lived on the 160 acres of land a day in my life only when I went out there—well I was living but it was not my home, and I never had a piece of furniture on the place."

R. H. McCoy testified that he was instrumental in selling the 58 acres of land to Mr. Greer, retaining a commission for the sale, and at the time suggested a loan through Mr. Russell. After some negotiations leading up to the loan, Mr. Russell informed him that he could not make the loan on Greer's homestead  Thereafter, he and Greer made a pretended transfer of possession, exchanged places temporarily. Greer and wife came over to the 160-acre tract where he was living; took apparent possession thereof, and he and his wife went over to the 48.16-acre tract where Greer was living and took apparent possession of that tract. He testified further that this transfer of possession between them was done to make it appear to Russell, when he came out to inspect the security, that Greer was actually living on and in possession of the 160-acre tract, and that he and his wife were actually living on and in possession of the 48.16-acre tract. He said: "We just swapped places there a few minutes so Russell would come and find me on the Greer place and Greer on the place that I had. Mr. Greer had a wolf skin rug in his house on the 48 acre place; Mrs. Greer knew Mr. Russell admired that rug and took particular notice of it, so she brought that wolf skin rug out to the 160 acre farm the morning she and Mr. Greer came out. She said, Mr. Russell would recognize that rug and think they had moved out there and were actually living out there."

A. M. Russell testified fully that he knew nothing of the pretended transfer of places between Greer and McCoy, and that there was nothing about the transfer of possession to put him upon inquiry as to who was in actual possession of the two premises; that, apparently, when he made the inspection of the security, Greer and wife were in actual possession, living upon and cultivating the 160-acre tract, and R. H. McCoy and wife were living upon and cultivating the 48.16 acres. He denied any knowledge of the homestead character of the 48.16 acres when the loan was closed.

Although the above testimony is sharply conflicting in material respects, however; the implication arising therefrom and the judgment of the trial court establish, we think, the fact that the 48.16-acre tract in question was the homestead of J. V. Greer and wife; that Russell knew, and by the exercise of reasonable diligence could have known, that the 48.16-acre tract was the homestead; that the property designated in the application for the loan and recited in the two deeds of trust as constituting the homestead at no time was ever occupied by Greer and wife as a home, and that such transfer of possession was fostered and encouraged by Russell and was done solely for the purpose of circumventing the Constitution and statute inhibiting the fixing of a lien on homestead property.

■ The Constitution declares that "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife." Article 16, § 50. There is no question that the application for the loan, the affidavit of the borrowers, and the recitals and declarations in the mortgage, reflecting the property was not homestead, assured the lender that it might safely lend its money without fear that such lien would be defeated by the existence of homestead character of the property. However, the undeniable facts are that Greer and wife had such homestead interests in the 48.16 acres, and during the negotiation leading up to the loan Greer was actually occupying and using it, which was known to Russell and the Loan Company, and, when the deed of trust was actually executed and money loaned, Greer's household effects were in the home. The property was in law and in fact the homestead of Greer and wife, and the lender of the money thereon was charged with notice of that fact. The rights of the parties must be determined by the facts as they actually existed when the

deeds of trust were executed, and not what was represented to the contrary by the parties.

In the case of Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, 13, Blalock and wife, at the time they gave the mortgages, were living upon the mortgaged property as their home, and used no other property as such. They represented that it was not their homestead, but that other land was, which they did not then and had never resided upon or used as a home; the court said: "If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution." The facts in this case unequivocably manifest that Greer and wife attempted to evade the law and incumber their homestead by false and fraudulent acts and representations, without any intention of abandoning the land on which they had established their home, and with the specific intent to deceive and defraud the lender, which deception was fostered and encouraged by Russell. However, be that as it may, at the time the mortgage was given the 48.16 acres of land was impressed with the homestead, on which the Constitution declares no lien such as claimed in this case can exist, and fraudulent acts and representations to the contrary, however made, cannot be the means to abrogate the Constitution and laws of the state and fix a lien on exempted property.

Therefore, we conclude that the facts, as we have stated them, raise no estoppel against a denial of the truth of the statements and declarations of appellants, and the trial court did not err in the premise.

We next consider appellants' assignment presenting the question of usury:

The loan transaction in question, in so far as pertinent here, consists (1) of a written application; (2) a principal note, or bond, in the sum of $8,200, bearing 5½ per cent. interest, payable annually, evidenced by attached coupons, and provides, in case of default in payment of any interest, the whole amount of the note may be declared due; (3) ten interest notes in the sum of $82 each, respectively evidencing 1 per cent. interest per annum on the principal note, and bearing 10 per cent. interest per annum after maturity until paid, each note providing: "Should this note not be paid when due * * * at the option of the owner hereof, any or all of said series of notes may be declared due"; and (4) two deeds of trust; the first deed of trust, given to secure the principal note, provides: "that so long as this lien continues, grantors will prior to November first each year pay all taxes then assessed in the State of Texas, upon said property, deed of trust, bond, or upon any interest of said trustee or his substitute or of A. Y. Creager Company or their assigns in said property or indebtedness * * *"; and the second deed of trust, made subject to the first deed of trust, securing the 10 interest notes, provides: "Should there by any failure or default in the performance of any of the covenants or agreements herein contained, or if any of said notes (10 interest notes) be not paid when due, or if default be made in the compliance with any of the covenants, agreements, terms or conditions of said first Deed of Trust, then at the option of the owner of said notes, exercised at any time after such default, any or all of said notes, shall at once become due to the extent that the total thereof, together with the interest on said bond at the rate therein provided shall not exceed an interest charge of 10 percent per annum on the amount of said bond from date at which its interest began to date of foreclosure, under this option. * * *"

Appellants base their contention on the recitals in the principal note, or bond, that it shall bear 10 per centum per annum after maturity, and the recital in the first deed of trust that requires of the borrower to "pay all taxes upon said property, deed of trust or bond assessed against the same in the State of Texas." If such was the intention of the parties, as gathered from the loan transaction, obviously the contract would be condemned as exacting of the borrower more than 10 per cent. interest on the money loaned, thus a usurious transaction. The payment of taxes under such circumstances is interest, a charge for the use or detention of money. But, it is well settled in this state that usury must be determined by construing all of the papers executed in connection with the loan transaction, and not by isolated clauses and provisions therein, and, if it can be determined

that the loan contract, fairly construed, intended not to exact of the borrower the payment of more than 10 per cent. per annum for the use or detention of the money loaned, the contract is not usurious.

The different instruments forming the transaction here involved manifest the means of collecting by the lender from the borrower of compensation for the use or detention of the money loaned, the sum of 6½ per cent. interest per annum, 5½ per cent. evidenced by coupons attached to the principal note, and 1 per cent. evidenced by 10 installment interest notes; and, in addition thereto, require the borrower to pay all taxes upon the principal bond assessed against it in the state of Texas. The requirement to pay all the annual taxes on the bond and all interest coupons and notes are based on a faithful performance of the various provisions of the contract, excluding the idea of prematurity of the note. Thus, if the loan contract matures because of default in any of its provisions, we think the covenant providing for the payment of interest at the rate of 10 per cent. per annum effectively supersedes all other provisions of the contract for the payment of interest, nullifies all future interest notes, coupons, and the provision for the payment of taxes "to the extent that the total thereof, together with the interest on said bond, at the rate therein provided, shall not exceed an interest charge of 10 percent per annum. * * *" The provision for the payment of 10 per cent. interest on acceleration of maturity of the note obviously scales down the interest coupons, notes, and the taxes obligated to be paid to where the amount thereof added to the 6½ per cent. interest on the bond shall not exceed a charge of 10 per cent. per annum.

In the case of Mortgage Bond Co. of New York v. Moore, 96 S.W.(2d) 91, decided by the Waco Court of Civil Appeals and in which a writ of error was refused by the Supreme Court, the note, as here, bore interest after maturity, by acceleration, at the rate of 10 per cent. per annum, and the deeds of trust required the borrower to pay all taxes that may be assessed against the note. The court held that the transaction was not rendered usurious by the acceleration provisions of the instrument involved therein (citing many authorities). So, also, is the holding of the Amarillo Court of Civil Appeals in the case of Temple Trust Co. et al. v. Cooper, 96 S.W.(2d) 408.

By the express and positive terms of the contract here involved, the unearned interest notes and the full amount of taxes assessed against the bond, after prematurity of the indebtedness under an option by the lender, forms no part of the indebtedness then due; the interest notes and taxes are reduced to the extent that such amount thereof added to the interest on the bond shall not exceed 10 per cent. per annum. Therefore, in view of the provisions in the second deed of trust limiting the amount of interest collectible, it effectively eliminates the imputation of usury in the loan contract; accordingly, appellants' assignment is overruled.

Appellant J. V. Greer complains of the action of the trial court in decreeing all costs in the court below be taxed against him, basing such complaint upon the fact that he recovered against appellee a cancellation of the lien on his homestead. It will be observed that appellants' cause of action is grounded on two separate and distinct affirmative counts: One, to cancel the lien on his homestead, and the other, for statutory penalty for an alleged usurious contract. The appellant Greer prevailed in the judgment of the lower court on one count and failed on the other count. Also, appellee's answer and cross-action involved two counts: First, seeking judgment on its indebtedness and foreclosure against the two tracts of land; and, second, resisting appellants' claim for usury. It was successful in establishing its indebtedness and foreclosing of its lien on one tract, and recovering on its defense of usury, but failed on the count for foreclosure on the other tract of land. In the view we take of this case, there being two causes of action in which either party might have been and, in effect, were plaintiffs in their respective causes, and each prevailing to the extent of recovering a portion of their affirmative relief asked, the costs of the court below should have been equally divided, that is, one-half of the cost taxed against appellants and one-half taxed against appellee; accordingly, the judgment of the court below is reformed as to the taxing of all costs against appellant J. V. Greer, and judgment here rendered taxing one-half of the costs below against appellants and one-half against appellee, and in all other respects the judgment of the court below is affirmed. The costs in this court are also taxed equally between the parties.

On Appellants' Motion for Rehearing.

LOONEY, Justice.

Appellants move for a rehearing, contending that we erred in not sustaining their plea of usury. They reassert the proposition originally relied upon for reversal, that is, that the contract is usurious, in that the bond executed by them provides for the payment of interest at the rate of 10 per cent. per annum after maturity, and that the first deed of trust given to secure same contains a provision obligating them, so long as the lien created by the deed of trust continues, to also pay, prior to November 1st of each year, all taxes then assessed in the state of Texas upon said bond. We think it may be assumed that the taxpaying provision in the first deed of trust renders the contract potentially usurious,—yet appellants, by neither allegation nor proof, attempted to show that, by reason of the bond having been assessed for taxes in the state, the contract became usurious in act or fact, their contention being simply that the provisions of the note and of the first deed of trust render the contract usurious, as a matter of law. Nor is any contention made that the annual interest of 5½ per cent. current prior to maturity, plus taxes assessed against the bond for any year, exceeded 10 per cent., thus rendering the contract usurious; in other words, by neither pleading nor proof do appellants seek to show that the contract was usurious other than for the reason first stated.

We affirmed the judgment below, denying appellants' plea of usury, because of the provision of the second deed of trust, which we construed to be a saving clause determining the amount of interest, not to exceed 10 per cent. per annum, collectible on the bond. The provision (after certain contingencies authorizing the acceleration of maturities) reads: " * * * Then at the option of the owner of said notes, exercised at any time after such default, any or all of said notes (second lien notes) shall at once become due, to the extent that the total thereof, together with the interest on said bond at the rate therein provided shall not exceed an interest charge of 10 per cent per annum on the amount of said bond from date at which its interest began to date of foreclosure under this option. * * *" The decision of the Waco Court of Civil Appeals, and that of the Supreme Court, in Duvall v. Kansas City Life Ins. Co., 96 S.W.(2d) 793, 797, and Kansas City Life Ins. Co. v. Duvall, 104 S.W.(2d) 11, did not enter into our consideration in reaching the conclusion first announced. Appellants now earnestly contend that the saving clause in the second deed of trust, involved in the case just mentioned, in effect is the same as the clause under consideration and was there held not to be a limitation upon the amount of interest collectible on the bond and had no bearing thereon. The saving clause involved in the Duvall Case, after enumerating a number of contingencies authorizing the acceleration of maturities, reads: "Or, if the amount of interest paid and accrued on said deed of trust bond, plus the amount of said Note, shall not aggregate more than ten per centum per annum on said bond for the time it shall have run, at the option of the legal owner and holder of said Note, the whole amount thereof shall at once become due and payable, and the trustee may sell said premises * * * subject, however, to the lien of said first deed of trust and to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured, and shall receive the proceeds of sale, which we shall pay and disburse as follows, to-wit." We have reached the conclusion that appellants' contention that the saving clause involved in the Duvall Case and that involved in the instant case, in effect, have the same meaning and were intended to accomplish the same purpose, is correct. After quoting at length the saving clause involved in the Duvall Case, the Waco court said: "We do not think an extensive or argumentative analysis of the foregoing excerpt is necessary to demonstrate that its provisions have no application to the obligation assumed by appellants in the first deed of trust to pay taxes on the principal notes and that they do not constitute any limitation on the amount which appellants would be required to pay in discharge of such obligation. * * *" This holding was approved by the Supreme Court. 104 S.W.(2d) 11. Therefore, in harmony with these decisions, we now hold that the saving clause in the second deed of trust here involved, whatever its meaning or bearing otherwise may be, is not a limitation on the amount of interest collectible under the provisions either of the bond or of the first deed of trust.

So we are brought to a reconsideration of appellants' contention from an angle not heretofore considered, because not deemed necessary, in view of our former

holding. The pertinent portion of the bond in suit is as follows: "Sherman, Texas, February 21, 1930. On the first day of November, 1940 (without grace) for value received, I, we, or either of us, promise to pay to the order of A. Y. Creager Co., Eighty-Two Hundred and no/100 Dollars at the Merchants and Planters National Bank at Sherman, Texas, with exchange on New York and with interest from March 1st, 1930, until maturity at the rate of 5½ per cent per annum payable annually which is evidenced by interest coupon hereto attached and with interest after maturity at the rate of ten per cent per annum. If default be made in payment of any interest when due, then the holder hereof may declare the whole amount of this note due. Should this note be placed with an attorney for collection after maturity or collected through proceedings in any court, I, we, or either of us, agree to pay ten per cent additional as attorney fees on the amount of the principal and accrued interest. This note is secured by First Deed of Trust made by J. V. Greer et ux. to F. W. Creager, Trustee, conveying real estate in Collin County, Texas." The first deed of trust provides a number of contingencies and obligations to be performed by the debtor, among others, the tax obligation, as follows: "That so long as this lien continues, grantors will, prior to November first each year, pay all taxes then assessed in the State of Texas, upon said * * * bond * * *." It also contains the following: "* * * should there be any failure or default in the performance of any of the covenants or agreement herein contained, or if any part of said debt is not paid when due * * * any or all of said bond and interest shall become due and payable without further notice, at the election of the owner of said bond exercised at any time after such default or failure or the happening of any of said events," etc. Thus it appears that the bond will bear interest at the rate of 10 per cent. per annum only after its maturity date, that is, the 1st day of December, 1940; prior thereto, the annual interest burden is 5½ per cent., plus the amount of taxes (considered interest) assessed upon the bond for any year. In view of these provisions of bond and first deed of trust, we think it obvious that at the maturity date of the bond (if not theretofore paid) it would bear a new rate of interest, superseding all other interest paying provisions, that is, 10 per

cent. per annum in lieu of the current rate of 5½ per cent. and the obligation to pay annual taxes assessed. We so construed a similar provision in Peoria Life Insurance Co. v. Harton, 84 S.W.(2d) 864 (writ refused). However, appellants insist that, by reason of the language of the tax-paying clause, to wit: "so long as this lien continues, grantors will, prior to November first each year, pay all taxes, etc.," that the obligation to pay taxes assessed upon the bond, in addition to 10 per cent. interest, persists even after its maturity. We cannot accept as correct this construction. As before stated, we think the current tax-paying provision of the first deed of trust, and its maturity accelerating provisions, pass out and are superseded by the provision for the payment of 10 per cent interest on the bond after maturity. Clearly, it was the legal duty of appellants to pay the bond at or before its maturity. We do not think they should be permitted, by reason of their failure to discharge this legal duty, to force a construction rendering the contract usurious, predicated, not upon the exercise of an option by the owner of the bond, but alone upon their own wrong. So, while the basis of our holding is shifted, the conclusion reached is the same as first announced. We therefore overrule appellants' motion for rehearing.

### On Appellee's Motion for Rehearing.

After more mature consideration, we have concluded that error was committed by us in holding that appellants (Greer and wife) were not estopped to deny the validity of the lien of the trust deed upon the 48.16-acre tract. In reaching that conclusion, we followed the rule announced by the Supreme Court in Texas L. & L. Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, 13, but have concluded that the rule there announced is neither applicable to nor controlling in the instant case. It seems that, at the time Blalock and wife executed the mortgage, they were physically residing upon the mortgaged property, exclusively using the same at their home, and were neither actually nor pretendedly using any other property in a manner as to render possession and use of the homestead property either doubtful or ambiguous. They represented that the property mortgaged was not their homestead, but that the same was upon another tract of land on which they did not reside and had never resided. So, in view of the unambiguous nature

of the tenure of the mortgaged property, the court held that, in fact and in law, it constituted their homestead and could not be mortgaged, and, further, that the declaration of husband and wife, to the effect that the mortgaged property was not their homestead, could not be relied upon by the creditor.

We have an entirely different situation in the instant case. As shown in the original opinion by Mr. Bond, Associate Justice, from the beginning of the transactions, by false and deceptive statements and conduct, appellants sought to obscure the fact that the 48.16-acre tract constituted a part of their homestead, in order to induce Creager Company to accept same as security for the loan sought. At the time Greer first applied for the loan (January 28, 1930) he and family were residing upon the 48.16-acre tract, but stated in the application that his homestead consisted of 40 acres, a part of the 78-acre tract, and the 160 acres situated about two miles distant, to which he intended to move in a few days. On February 19th, Mr. Russell, the Creager Company agent, through whom the negotiations were being conducted, made a trip of inspection, found both Greer and R. H. McCoy on the 48.16-acre tract (McCoy being Greer's tenant, occupying the 160-acre tract just mentioned), and was informed by Greer that he and wife had already two days before moved from the 48.16-acre tract to the 160 acres, with the view of making it their future home; also was informed that McCoy had rented the 48.16-acre tract for the year 1930, and a written lease contract between Greer and McCoy to that effect was exhibited to Russell. On February 21st, Greer and wife executed the joint affidavit copied at length in the original opinion, stating that on February 17th they had moved from the 48.16-acre tract to the 160-acre tract, and were using and cultivating same. On February 24th (the day the loan was closed) Russell made his final inspection before closing the loan, and found Greer and wife occupying the 160-acre place, Mrs. Greer engaged at domestic duties in the house, and Greer plowing in the field, to all appearances they were at home and perfectly domesticated, and McCoy and wife occupied and apparently were similarily domesticated on the 48.16-acre tract. At the trial Greer admitted, in effect, that their representations regarding the homestead were false and made to deceive the lender and obtain the loan. Mrs.

Greer testified that, acting under the advice of Russell, Creager Company's agent, they vacated (temporarily) the 48.16-acre tract and occupied the McCoy home on the 160-acre tract and, as it appears, took from their home on the 48.16-acre tract a wolfskin rug, previously observed by Russell, placing it upon the floor of the McCoy house, that Russell might observe as evidence that they had moved. After the inspection by Russell, as just detailed, the parties immediately (the same day) went to the bank, executed the written documents, and closed the loan.

We think that, in view of the false representations by Greer and wife and their pretended removal from the 48.16-acre tract to and physical occupancy of the 160-acre tract, all for the purpose of obscuring the homestead status of the 48.16-acre tract and to induce Creager Company to make the loan (which in fact did deceive and induce the loan), they estopped themselves to deny the validity of the mortgage.

Notwithstanding the constitutional provision forbidding the mortgaging of the homestead (except for certain purposes), it is settled law in this state that it may be lost, not because a mortgage or lien attempted to be placed thereon is valid, but because homesteaders may estop themselves to deny the truth of their declarations as to the status of the homestead, or claim the protection afforded by the Constitution, in instances, among others, where, at the time of the execution of the mortgage, the property is being used in such an ambiguous manner as to render its status doubtful. It was held in Carstens v. Landrum, 17 S. W.(2d) 803, by the Commission of Appeals, that declarations in a deed of trust by husband and wife, with respect to which of the two places was intended as their homestead, raised the issue of estoppel against them to deny the truth of their declarations where the occupancy by the husband of the mortgaged place was palpably ambiguous in respect to homestead intention. To the same effect see: Dallas B. & L. Ass'n v. Patterson (Tex.Civ.App.) 48 S.W.(2d) 657 (writ refused) and authorities cited; also First Texas, etc., Bank v. Chapman (Tex. Civ.App.) 48 S.W.(2d) 651 (appeal dismissed).

The evidence tends to show, and would justify the conclusion, that Russell, the Creager Company agent, knowing that the 48.16-acre tract was a part of appel-

lants' homestead, advised and fostered the deception perpetrated; on the other hand, Russell denied any knowledge of the homestead character of the 48.16-acre tract, testifying that he knew nothing of the pretended exchange of places between the Greers and McCoys, that apparently Greer and wife were in actual possession of the 160-acre tract, using and cultivating same, and that McCoy and wife were similarly in possession of and using the 48.16-acre tract. However, we do not think the conflict in evidence on the point just mentioned is material. It is undisputed that, relying upon the truth of representations, in the application for the loan, in the affidavit by appellants setting up, among other things, that they had actually moved from the 48.-16-acre tract and were occupying the 160 acres, and similar representations in the deed of trust, and the information furnished by Russell, to the effect that the Greers had actually moved from the 48.16-acre tract and were residing upon the 160-acre tract, Creager Company was induced to make the loan. So, if Russell, the agent, was deceived and acted prudently, in good faith, without knowledge that the representations by Greer and wife were false and the exchange of places a mere sham and pretense to obscure the facts, clearly, we think appellants would be estopped to set up the homestead character of the 48.16-acre tract to defeat the mortgage lien. In Blum v. Merchant, 58 Tex. 400, Judge Willie, speaking for the Supreme Court, said: "A false representation, or concealment of material facts, made with a knowledge of the facts; ignorance on the part of the person to whom the representations are made, or from whom the facts are concealed; intention that such person should act upon it, and action on his part induced thereby," are the elements of estoppel. In Davis v. Allison, 109 Tex. 440, 211 S.W. 980, 984, speaking for the Supreme Court, Judge Phillips used the following pertinent language, he said: "Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and

whose character as represented parties to the deception will not, in the interest of justice, be heard to deny. But one entitled to its protection must have been misled." Therefore, if the situation, as presented by the testimony of Russell, be accepted as true, that is, that he was innocent of any knowledge of or participation in the deceptive scheme of the Greers, under the doctrine announced by Judges Willie and Phillips, appellants, in our opinion, would be estopped to deny the validity of the mortgage placed by them upon the 48.16-acre tract, although at the time the loan was closed it constituted a part of their homestead. On the other hand, if the conclusion (which is supported by evidence) is reached that Russell, being fully cognizant of the facts, advised the Greers and McCoys to make the pretended exchange of places, and thereafter reported to his principal that the Greers actually had moved from the 48.16-acre tract to the 160 acres to make it their home, Creager Company would not be affected by Russell's knowledge because of his participation in the fraud and deception practiced by the Greers. See First Texas, etc., Bank v. Chapman (Tex.Civ.App.) 48 S.W.(2d) 651, 654 (appeal dismissed), and authorities cited. So, we conclude that under either theory appellants were estopped to plead homestead exemption for the purpose of defeating the mortgage lien upon the 48.16-acre tract; therefore, sustain appellee's motion for rehearing.

### Conclusion.

In harmony with the foregoing, we overrule appellants' motion for rehearing; sustain appellee's motion, set aside our former holding affirming the judgment of the trial court wherein appellee was denied foreclosure upon the 48.16-acre tract, reverse the judgment of the trial court in that respect, and here render judgment for appellee against appellants, foreclosing its said lien upon the 48.16-acre tract, as well as upon the 78 acres, and affirm the judgment below in other respects. All costs of this and of the court below will be taxed against appellants.